OFFICE OF DISCIPLINARY COUNSEL and the Board of Professional Responsibility of the Supreme Court of Tennessee, Appellee,

v.

George F. HENRY, Appellant.

Supreme Court of Tennessee,
Middle Section, at Nashville.

Nov. 28, 1983.

James B. Dance, Carthage, for appellant.

Ronald L. Davis, Disciplinary Counsel, Nashville, for appellee.

## OPINION

COOPER, Justice.

This is an appeal from a judgment suspending George F. Henry from the practice of law for a period of two years, and conditioning his reinstatement "upon a showing that he has obtained a level of competence adequate to justify the issuance of a license." Appellant insists that his general competency to practice law was not placed in issue by the petition filed by the Disciplinary Board, and that the trial judge was in error in admitting and in acting upon "opinion" evidence on the issue. Appellant also insists that the evidence does not support the trial judge's finding that appellant was guilty of the specific acts of misconduct and violations of disciplinary rules charged and, if so, they do not constitute grounds for the suspension of his license to practice law.

In the original Petition for Discipline filed with the Board of Professional Responsibility, appellant was charged with numerous violations of the Code of Professional Responsibility in his handling of the "Crider Matter," the "Jernigan Matter," the "Shumpert Matter," and the "Wallace Hardware Matter." While charging lack of competence to handle the subject matter of the four cases specified, there was no allegation in the petition of general incompetency to practice law. Absent such a charge, the trial court should not have admitted "opinion" evidence on appellant's general competency, but should have limited evidence to the four matters or cases set forth in the petition. The admission of general "opinion" evidence, however, did not affect the ultimate outcome of this case, as numerous violations of the Disciplinary Rules are evident in appellant's handling of the four matters set forth in the pleadings.

In the "Crider Matter" appellant accepted employment to represent William Crider, who was under indictment for first degree murder. Appellant admitted that he had never handled a murder case before, or, for that matter, any felony. Despite his lack of

experience, appellant did not associate any attorney with him in the defense of Mr. Crider, nor did he even consult with another attorney. Appellant made little, or no, investigation of the crime, nor did he talk with possible witnesses or to alibi witnesses, nor make any concerted effort to try to discover the case the State had against his client.

Appellant also demonstrated in the *Crider* matter that he had no familiarity with the Rules of Criminal Procedure. He filed motions based on statutes which had been superseded by the rules. More surprisingly, he filed an answer and an amended answer to the indictment, similar in form to an answer that would be filed in a civil action. The amended answer set forth in detail Mr. Crider's version of the homicide. At the time of the filing of the amended answer, the appellant did not know whether or not his client had given a statement to the police authorities. Further, there is evidence in the record that without the statement of appellant's client in the amended answer, the state would have had difficulty in getting by the "directed verdict" stage in any trial on the indictment.

The trial judge found that appellant's representation of Mr. Crider was "a flagrant example of incompetency," and was a violation of the following Disciplinary Rules, charged in the petition.

DR6–101. Failing to Act Competently— (A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

(2) Handle a legal matter without preparation adequate in the circumstances.

DR7–101. (A) A lawyer shall not intentionally:

\* \* \* \* \* \*

(3) Prejudice or damage his client during the course of the professional relationship

. . . .

We concur in the trial judge's findings.

The "Jernigan Matter" relates to an action filed by the appellant in the United States District Court, Middle District of Tennessee. Appellant filed a complaint charging:

a violation of [Jernigan's] civil rights by the defendant, damage to his reputation, mental anguish, and trespass upon his rights as an American freeman, christian catholic, and a veteran of the United States Armed Forces, all of which were proximately caused by the willful and wanton conduct of the defendant in sending through the United States Mail obscene writing and pictures to your plaintiff contrary to T.C.A. 39–3001 and Federal Code pertaining to the United States Mail Service.

At the time the complaint was filed, appellant had not been admitted to practice in the federal court and admittedly was not familiar with the Federal Rules of Civil Procedure. Appellant also was unfamiliar with civil rights law, and the law of libel. Knowing his shortcomings, appellant did not consult with any attorney, nor do any research, not even to read the Federal Rules of Civil Procedure, before filing the action. On inquiry, appellant was unable to state what civil right might have been violated by the defendant, nor could he specify any federal statute which might have been violated. Neither was appellant able to explain how his client could be libeled by the receipt of pornographic materials through the mail. In explanation of his lack of research and preparation, appellant said he intended to take advantage of the liberal amendment policy in the federal courts to cure any error in his complaint, when a need to do so was brought to his attention by his adversary. The case eventually was dismissed for failure on the part of the appellant to plead federal jurisdiction with specificity.

The trial judge concluded that appellant's actions were violative of Disciplinary Rule 6–101 (Failure to Act Competently). The trial judge also found that appellant violated DR7–102(A)(3) by knowingly advancing a claim that is unwarranted under existing

law; DR2–109(A)(2), by presenting a claim in litigation that is not warranted under existing law; and DR1–102(A)(5)(6) by engaging in conduct that was prejudicial to the administration of justice and which adversely reflected on appellant's fitness to practice law. We agree with the trial judge's findings and conclusions.

In the "Shumpert Matter," appellant filed suit in the Circuit Court of Putnam County for a mobile home dealer against a manufacturer to settle a dispute over discounts and the financing of mobile homes. In pretrial discovery, appellant allowed his client to take "the Fifth Amendment" on several occasions, though the questions asked were innocuous and could in no way expose appellant's client to criminal sanctions. In a hearing before the trial judge to compel answers, appellant suggested that the matter should be taken up by the Grand Jury, showing a lack of knowledge of the function of the Grand Jury.

On trial of the *Shumpert* case, appellant's presentation of his client's position activated the trial judge, sua sponte, to declare a mistrial. In testifying in this disciplinary proceeding, the trial judge expressed the opinion the jurors could not have possibly comprehended the cause of action as it was being presented, and obviously were not taking the matter seriously as some members of the jury were laughing and giggling. The judge went on to explain that:

> The case became involved in such a way that I felt that Mr. Henry's client was not getting his day in Court and I entered a mistrial without saying anything to anybody.

The trial judge in this disciplinary action found that appellant's handling of the "Shumpert Matter" violated DR6–101(A)(2) and (3), in that appellant undertook to represent Mr. Shumpert without preparation adequate in the circumstances, and neglected a legal matter entrusted to him. We agree with the trial judge's finding.

In the "Wallace Hardware Matter," appellant is charged with having obtained a default judgment against Mid-State Equipment Company, a corporation, and thereafter obtaining executions against its incorporators individually, though there was no judgment against them. Appellant believed that there had been a violation of the "bulk transfer law" in the sale of property of Mid-State Equipment Company, though there is nothing in the record to so indicate. He made no effort to see the list and schedules required to be kept by the transferee under T.C.A. § 47–6–104, but decided to pursue the matter by levying execution against individuals against whom he had no judgment, and to summon them to court and question them under oath about the transfer of property.

The trial judge was of the opinion that the intentional issuance of executions against individuals against whom no judgments were outstanding was a violation of Disciplinary Rule 1–102(A)(5) and (6), which prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice, or adversely reflects on the attorney's fitness to practice law. We agree with this finding.

■ Appellant argues that the judgment of a two year suspension of his license to practice law and the conditioning of his reinstatement "upon a showing that he has obtained a level of competence adequate to justify the issuance of a license" for violations of the disciplinary rules set out above is improper, is too severe, and is an abuse of discretion. There are problems inherent in using disciplinary proceedings to punish an attorney for the incompetent handling of a client's affairs, or for negligence, and it is not in every malpractice case that disciplinary action should or would be ordered. But, here we have an attorney mishandling four cases in a relatively short period of time. Appellant's actions in each of the cases demonstrate not only a lack of knowledge of basic procedure and of substantive law, but no inclination on the part of the appellant to do anything to improve his ability to represent his clients. As so aptly pointed out in *People ex rel. Goldberg v. Gordon,* 199 Colo. 296, 607 P.2d 995, 998 (1980):

A license to practice law is a proclamation to the public that the holder thereof is one to whom a member of the public may, with confidence, entrust his professional matters, with the assurance that in the performance of legal services the lawyer will perform the basic legal tasks undertaken, competently, ethically, and in accordance with the highest standards of professional conduct. The public therefore, has every right to expect that one who has demonstrated through professional misconduct a lack of minimal professional competence required of attorneys, shall be appropriately disciplined.

In our opinion the discipline decreed by the trial judge is appropriate under the circumstances of this case. We, therefore, affirm his judgment. Costs of the case will be paid by the appellant, George F. Henry.

FONES, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.