# IN THE SUPREME COURT OF TENNESSEE
# AT NASHVILLE
October 4, 2000 Session

# MICHAEL H. SNEED v. BOARD OF PROFESSIONAL RESPONSIBILITY

**Appeal from the Chancery Court for Davidson County**
**No. 98-3543-II    Tom E. Gray, Chancellor by Interchange**

---

**No. M1999-01588-SC-R3-CV - Filed December 13, 2000**

---

This case is before the Court on an appeal of right from the judgment of the Chancery Court of Davidson County suspending Michael H. Sneed, the appellant, from the practice of law for six months together with other sanctions. Sneed contends that the trial court erred in imposing discipline and that the six-month suspension is too harsh a sanction. Because we conclude that the trial court had the authority to impose sanctions and that the sanctions imposed are fair and proportionate in light of the entire record, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which E. RILEY ANDERSON, C. J., FRANK F. DROWOTA, III, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Michael H. Sneed, Nashville, Tennessee, for the appellant, Michael H. Sneed.

Charles A. High, Nashville, Tennessee, for the appellee, Board of Professional Responsibility.

**OPINION**

## I. Facts and Procedural History

Michael H. Sneed was licensed to practice law in Tennessee on August 19, 1985, and has practiced in Tennessee since that date. He appeals the judgment of the Chancery Court of Davidson County suspending him from the practice of law for six months along with other sanctions[1] for

---

[1] In addition to the six-month suspension, the trial court also suspended Sneed for an indefinite period of time with the indefinite suspension to end when Sneed had completed courses by the Board of Professional Responsibility in the areas of general legal ethics and law office management. The trial court also specified that if the courses were not completed during the six months of suspension, the indefinite suspension would continue until the courses were completed.

violations of the Code of Professional Responsibility in connection with his representation of Jonathan Hyler and R. Scott Constantino, respectively.

This cause was initiated on April 21, 1998, by the filing of a Petition for Discipline by the Board of Professional Responsibility (Board). A Hearing Panel convened on September 14, 1998, and on September 29, 1998, recommended that Sneed be suspended for a period of six months. Sneed petitioned to the Chancery Court for Davidson County for a writ of certiorari, pursuant to Tennessee Supreme Court Rule 9, Section 8.3, to review the judgment of the Hearing Panel.

In the trial court, Sneed conceded most of the allegations of the petition for discipline. He contended, however, that his negligence did not cause substantial harm to his clients. The following are the trial court's findings as to Sneed's handling of Hyler's and Constantino's cases:

THE HYLER COMPLAINT

4. Jonathan Hyler filed a complaint against the respondent with the Board of Professional Responsibility ("Board") alleging that respondent was ineffective in representing Hyler in a criminal case, by failing to raise an issue relating to certain evidence (a 911 tape) and also failing to file an application for permission to appeal a ruling of the Court of Criminal Appeals to the Tennessee Supreme Court. (The Hyler complaint is file number 15937-5-CH and will be referred to hereinafter by that number or as the "Hyler case or "Hyler complaint.")

5. Respondent was hired by Hyler to represent him after Hyler had been convicted of aggravated rape and sentenced to thirty (30) years in prison. Respondent argued the motion for new trial, which was denied, and also handled the appeal to the Court of Criminal Appeals, which upheld the conviction.

6. Respondent never filed an application for permission to appeal the Court of Criminal Appeals decision to the Supreme Court. At a subsequent hearing on petition for post-conviction relief, Hyler testified that respondent had told him he intended to file the application and that he in fact had filed the application. Hyler testified that respondent later told him that the application had been filed, but not decided. Eventually, Hyler testified that respondent told him the application had been denied. Hyler's testimony at the hearing was corroborated by two other witnesses.

7. Respondent Sneed admitted at the post-conviction hearing that he had not filed the application and that there was no good reason

-2-

for his having failed to do so. The Court of Criminal Appeals ruled that Hyler had been denied a "second tier" review of his conviction through no fault of his own, and allowed a delayed appeal to the Supreme Court, which was eventually denied.

8. Throughout the disciplinary proceedings with respect to the Hyler complaint, the respondent was untimely in responding to correspondence from disciplinary counsel and simply ignored deadlines without explanation. The initial summary of complaint was mailed to the respondent on November 12, 1996, requesting a response within ten (10) days. (Exhibit A to petition.) Respondent answered on December 10, almost thirty (30) days later. (Exhibit B to petition.) A copy of Mr. Hyler's response to respondent's explanation was mailed to respondent by disciplinary counsel on February 21, 1997, requesting a response within ten (10) days. (Exhibit D to petition.) Respondent did not file a response until May 13, 1997, almost three months later, even after two additional requests were mailed by disciplinary counsel, on March 28, 1997 and April 25, 1997. The latter request was sent by certified mail and advised that a motion for temporary suspension would be filed unless a response was received. (Exhibits E and F to petition.) As noted above, the respondent also filed a late answer to the petition and arrived thirty minutes late to the hearing, without explanation.

## THE CONSTANTINO COMPLAINT

9. R. Scott Constantino filed a complaint against the respondent, by next friend for Arthur Bailey, David Henson, and James White, former clients of the respondent, based upon neglect, noncompliance with local rules and orders of a federal district court resulting in the dismissal of the case with prejudice, and failure to file a timely notice of appeal. (The Constantino complaint is file number 17776-5-CH and will be referred to hereinafter by number or as the "Florida federal case.")

. . .

12. The respondent advised the plaintiffs after the transfer that there would be a need to hire local counsel in Florida. It appears that the plaintiffs themselves interviewed several attorneys, but it was unclear from the testimony of Mr. Bailey, Mr. White, or of the respondent as to how or when local counsel was in fact finally

obtained. There was no evidence that the respondent made any effort to obtain local counsel in Florida.

13. After the transfer, the respondent engaged in a pattern of neglect and failure to comply with the local rules and orders of the court which eventually led to the dismissal of the plaintiff's (sic) action with prejudice.

14. On January 20, 1995, the federal judge in Florida issued an Order to Show Cause to the plaintiffs why their case should not be dismissed for lack of prosecution because of the failure to file a case management report as prescribed by local rule. (Exhibit O to petition.)

15. On February 17, 1995, the magistrate judge in Florida ordered respondent to show cause why he had not complied with local rules concerning designation of local counsel. (Exhibit P to petition.) On March 3, 1995, the federal district judge entered an order striking the case management report filed by the respondent for failure to designate local counsel. This order stated further that the court "would not tolerate further disregard of the Local Rules" by the respondent. (Exhibit Q to petition.)

16. On March 28, 1995, the magistrate judge issued another order to show cause compelling the respondent to comply with the local rule with respect to designating local counsel. (Exhibit R to petition.) On April 17, 1995, the magistrate judge issued another order to show cause why the respondent should not be sanctioned for failure to comply with the March 28 order. (Exhibit S to petition.)

17. On October 26, 1995, the magistrate judge issued an order granting defendant's motion to compel discovery and sanctioning the plaintiffs for failing to comply with CSX's interrogatories and requests for production of documents. The respondent was ordered to pay $150.00 in attorney's fees within ten (10) days.

18. On December 7, 1995, the magistrate judge issued an order granting a second motion to compel and sanctioning the respondent for failure to adequately respond to CSX's interrogatories, imposing sanctions of $250.00, and ordering that responses be made within ten (10) days. (Exhibit U to petition.) On January 4, 1996, the magistrate judge issued another order, denying sanctions for failure to comply with the prior orders, but cautioning the respondent that he

-4-

must timely comply with the court's future orders. (Exhibit V to petition.)

19. On February 5, 1996, the federal district judge entered a notice scheduling a final pre-trial conference for February 28, 1996 at 10:10 A.M. (Exhibit W to petition.) The pre-trial conference was re-scheduled at the respondent's request for February 29, but the respondent failed to appear at the final pre-trial conference. On March 1, 1996, the district court entered an order dismissing the plaintiffs' case with prejudice for respondent's failure to appear at the final pre-trial conference and numerous failures to comply with the local rules and the court's prior orders, as outlined in the preceding paragraphs. This order, which was incorporated by reference into the petition, and the findings of which are admitted by the respondent, found, among other things a "pattern (by the respondent) of disregarding the Local Rules and the orders of this Court." (Exhibit X to petition.)

20. The respondent attempted to appeal the district court's order, but the appeal was dismissed by the Eleventh Circuit Court of Appeals because it was not timely filed. (Exhibit Y to petition.)

With regards to Hyler's complaint, the trial court found that Sneed had violated the following Disciplinary Rules: DR 1-102(A)(1),[2] DR 6-101(A)(3),[3] and DR 7-101(A)(1) and (2).[4] With regards to Constantino's complaint, the trial court found that Sneed had violated the following Disciplinary

---

[2] DR 1-102(A)(1) provides: "A lawyer shall not . . . [v]iolate a Disciplinary Rule."

[3] DR 6-101(A)(3) provides: "A lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer."

[4] DR 7-101(A)(1) and (2) provide:

(A)(1) A lawyer shall act with reasonable diligence and promptness in representing a client.

(2) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for communication or information.

Rules: DR 1-102(A)(1)[5] and (5),[6] DR 3-101(B),[7] DR 6-101(A)(2)[8] and (3),[9] DR 7-101(A)(1)-(3),[10] DR 7-101(A)(4)(a) and (b),[11] and DR 7-106(A)[12] and (C)(7).[13]

On July 11, 1999, the trial court entered its judgment finding that Sneed had violated the Disciplinary Rules as specified, and it suspended him for a period of six months. Pursuant to the provisions of Tennessee Supreme Court Rule 9, Section 1.3, Sneed perfected his appeal to this

---

[5]See supra note 2 and accompanying text.

[6]DR 1-102(A)(5) provides: "A lawyer shall not . . . [e]ngage in conduct that is prejudicial to the administration of justice."

[7]DR 3-101(B) provides: "A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction."

[8]DR 6-101(A)(2) provides: "A lawyer shall not . . . [h]andle a legal matter without preparation adequate in the circumstances."

[9]See supra note 3 and accompanying text.

[10]DR 7-101(A)(1)-(3) provide:

(A)(1) A lawyer shall act with reasonable diligence and promptness in representing a client.

(2) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for communication or information.

(3) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[11]DR 7-101(A)(4)(a) and (b) provide:

(4) A lawyer shall not intentionally:

(a) Fail to seek the lawful objectives of the client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of the client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

(b) Fail to carry out a contract of employment entered into with a client for professional services, but a lawyer may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.

[12]DR 7-106(A) provides: "A lawyer shall not disregard or advise the client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but may take appropriate steps in good faith to test the validity of such rule or ruling."

[13]DR 7-106(C)(7) provides: "In appearing in a professional capacity before a tribunal, a lawyer shall not . . . [i]ntentionally or habitually violate any established rule of procedure or of evidence."

Court. Before this Court, Sneed characterizes his conduct as negligent. He contends, however, that negligent conduct is not subject to discipline–only willful misconduct is. Sneed contends also that the Board, ignoring its "policy of progressive discipline," has imposed a disproportionately harsh sentence.

## II. Standard of Review

Tennessee Supreme Court Rule 9, Section 1.3, provides that review by the Supreme Court "shall be heard upon the transcript of the record from the circuit or chancery court, which shall include the transcript of evidence before the hearing committee." Additionally, our review of this cause is de novo on the record of the trial court, and to the findings of the trial court there is attached a presumption of correctness unless the evidence preponderates against those findings.[14] See Tenn. R. App. P. 13(d); see also Dockery v. Board of Professional Responsibility, 937 S.W.2d 863, 865 (Tenn. 1996).

## III. Analysis

Sneed contests the authority of the Board to impose sanctions. Specifically, he maintains that although his misconduct was negligent, it was not willful. He insists, then, that negligent misconduct is not subject to discipline. Disciplinary Rule 1-102, which defines "misconduct," implies that the mere violation of a Disciplinary Rule, without inquiry into the gravity of the conduct, may subject an attorney to discipline. See DR 1-102(A)(1). Additionally, contrary to Sneed's assertion, his misconduct may be characterized as willful and intentional. Because Sneed concedes violations of the Disciplinary Rules, we see no need to examine the nature of the misconduct or his intention further to determine the Board's authority to impose discipline.

As a general rule, negligent misconduct may provide a basis for discipline. The ABA Standards for Imposing Lawyer Sanctions (1986) provide:

> 4.42 Suspension is generally appropriate when:
>
> (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
>
> (b) a lawyer engages in a pattern of _neglect_ and causes injury or potential injury to a client.

(Emphasis added.) In addition, our rules state that a lawyer's negligent misconduct may be grounds

---

[14] Tennessee Supreme Court Rule 9, Section 1.3, does not explicitly provide for de novo review upon the record of the trial court, with a presumption of correctness unless the preponderance of the evidence is contrary to the findings. This standard, however, is implied from the following sources: Tenn. R. App. P. 13(d); Murphy v. Board of Professional Responsibility, 924 S.W.2d 643, 647 (Tenn. 1996); Gillock v. Board of Professional Responsibility of Supreme Court, 656 S.W.2d 365, 367 (Tenn. 1983); and Scruggs v. Bracy, 619 S.W.2d 101, 103 (Tenn. 1981).

for discipline. For example, DR 6-101(A)(3) states, "A lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer." (Emphasis added.) This Court has also imposed sanctions for negligent misconduct. In Office of Disciplinary Counsel v. Henry, 664 S.W.2d 62, 65 (Tenn. 1983), the trial court found that the attorney had (1) failed to act competently, (2) knowingly advanced a claim that was unwarranted under existing law, and (3) engaged in conduct that was prejudicial to the administration of justice. This Court upheld the trial court's finding that the attorney's negligent misconduct warranted suspension. Henry, 664 S.W.2d at 65. Thus, Sneed may be disciplined for negligent misconduct.

Because the Board has the authority to discipline an attorney for negligent misconduct and Sneed does not dispute that he violated the Disciplinary Rules, the only issue to determine is whether the sanctions imposed were appropriate. Sneed contends that the six-month suspension and other sanctions imposed by the trial court are excessive. He argues that the Board has adopted a policy of "progressive discipline" which was not implemented in this case. There is no evidence, however, that this policy exists. Even were such a policy in existence, Sneed's suspension would have been proper in light of his prior disciplinary record involving similar misconduct.[15] We are of the opinion that the discipline imposed by the trial court is appropriate under the circumstances of this case.

## IV. Conclusion

We conclude that the Board had the authority to discipline Sneed for negligent conduct, and the sanctions imposed by the trial court are fair and proportionate. The judgment of the trial court is, therefore, affirmed. Accordingly, Sneed is suspended from the practice of law for a period of six months. In addition, Sneed shall be suspended for an indefinite period of time with the indefinite suspension to end when he has completed courses by the Board of Professional Responsibility in the areas of general legal ethics and law office management. It is intended that Sneed complete the

---

[15] The following are disciplinary actions taken against Sneed for similar misconduct:

1. Violation of DR 6-101 and DR 7-101(A)--Admonition on July 29, 1992, for failure to file a complaint within the applicable statute of limitations as well as failure to communicate with client.

2. Violation of DR 6-101--Admonition on August 26, 1992, for failure to serve process which resulted in the dismissal of client's case and for lack of investigation prior to filing a complaint.

3. Violation of DR 7-101(A)(1)-(4), DR 6-101(A)(1)-(3), and DR 1-102(A)(1)-(6)--Public censure in May 1993 for failure to timely file a complaint and for failure to communicate with client.

4. Violation of DR 6-101(A)(2) and (3) and DR 7-101(A)(2) and (3)--Public censure on August 15, 1994, for failure to file a complaint within the applicable statute of limitations.

5. Violation of DR 7-101 (A)(4) and DR 7-101(A)(2) and (3)--Private reprimand on October 13, 1995, for dismissal of a case without client's consent and for failure to communicate with client.

6. Violation of DR 7-101(A)(1)-(4), DR 6-101(A)(1)-(3), and DR 1-102(A)(1)-(6)–Public censure on November 21, 2000, for failure to timely file a complaint and for failure to communicate with client.

courses within the six-month period of suspension allowing the definite suspension of six months and the indefinite period of suspension to run concurrently. If the courses are not completed during the six months of suspension, indefinite suspension shall continue until the courses are completed. Costs are taxed to the appellant, Michael H. Sneed.

 

 

_____
ADOLPHO A. BIRCH, JR., JUSTICE