IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 14, 2008 Session


**DENNIS J. HUGHES V. BOARD OF PROFESSIONAL RESPONSIBILITY
OF THE SUPREME COURT OF TENNESSEE**


**Appeal by Permission from the Chancery Court for Davidson County
No. 06-1567-IV    Judge Jerry Scott, Senior Judge**

---

**No. M2007-01562-SC-R3-BP - Filed July 10, 2008**

---


JANICE M. HOLDER, J., concurring and dissenting.

Although I concur in much of the majority opinion, I write separately to express my disagreement with the majority's expansion of the scope of our standard of review in Board of Professional Responsibility ("BPR") cases. Under its revised standard, the majority fails to give proper deference to the panel's conclusion that Mr. Hughes clearly and convincingly demonstrated that his reinstatement would not be detrimental to the integrity of the bar, the administration of justice, or the public interest. Because the outcome of this case turns upon the proper application of our standard of review, I will explain my views on that standard in some detail.

I.

Prior to recent amendments, a trial court reviewing a panel decision was required to review the transcript of the evidence before the hearing panel, hear any new evidence that the parties wished to introduce, and "weigh the evidence and determine the facts by the preponderance of the proof." Tenn. R. Sup. Ct. 9, § 1.3 (2005). Either party then could appeal the judgment of the trial court to this Court, and we would review "the transcript of the record from the circuit or chancery court," which would include "the transcript of evidence before the hearing [panel]." Id. Although our rules did not explicitly state our standard of review, we concluded that we should review the trial court's findings de novo with a presumption of correctness unless the evidence preponderated against those findings. Bd. of Prof'l Responsibility v. Slavin, 145 S.W.3d 538, 546 & n.4 (Tenn. 2004); Sneed v. Bd. of Prof'l Responsibility, 37 S.W.3d 886, 890 & n.14 (Tenn. 2000).

As of July 1, 2006, the scope of a trial court's review of panel decisions was narrowed by an amendment to Tennessee Supreme Court Rule 9, section 1.3. Pursuant to the amended rule, trial courts are no longer permitted to admit evidence that was not heard by the hearing panel unless one of the parties alleges that there were "irregularities in the procedure before the panel." Tenn. R. Sup. Ct. 9, § 1.3 (2007). If such irregularities are not alleged, a trial court's review must be based entirely on the transcript of the evidence before the panel and the panel's findings and judgment. Id. In

addition, trial courts are no longer permitted to reweigh the evidence. See id. Rather, a trial court's review is limited to determining whether

> the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Id.

On its face, the amended rule does not appear to have altered this Court's standard of review. Consistent with the earlier version of the rule, our review remains limited to "the transcript of the record from the circuit or chancery court, which shall include the transcript of evidence before the hearing panel." Id. In addition, the amended rule continues to lack any explicit reference to the standard of review to be applied by this Court. See id. In fact, the amendments to the rule did not make any significant changes to the language relating to this Court's review of a panel's findings.

Despite the lack of obvious changes to the provisions relating to this Court, there are good reasons to conclude that the recent amendments did in fact change our standard of review. As we recently observed in Bd. of Prof'l Responsibility v. Love, ___ S.W.3 ___, ___ (Tenn. 2008), the conditions upon which a trial court may reverse a panel's decision are derived from Tennessee Code Annotated section 4-5-322(h) (2005), the section governing judicial review of administrative decisions. When determining this Court's standard of review in administrative cases, we have long recognized that "it would be impracticable for this Court to afford any broader or more comprehensive review to cases arising under the [Uniform Administrative Procedures] Act than is afforded to them by the trial court in the first instance." Humana of Tenn. v. Tenn. Health Facilities Comm'n, 551 S.W.2d 664, 668 (Tenn. 1977) (quoting Metro. Gov't of Nashville & Davidson County v. Shacklett, 554 S.W.2d 601, 604 (Tenn. 1977)). Accordingly, we have held that when reviewing administrative decisions, our standard of review is identical to the standard of review applied in the first court to review the decision. CF Indus. v. Tenn. Pub. Serv. Comm'n, 599 S.W.2d 536, 540 (Tenn. 1980). Because a trial court's review of BPR hearing panel decisions has been narrowed to approximate the review of administrative decisions, we have concluded that our standard of review has been similarly narrowed. See Love, ___ S.W.3d at ___. We therefore apply the same standard applied by trial courts in BPR cases and will reverse a panel's decision only if

> the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3.

In this case, all parties agree that the panel did not violate any constitutional or statutory provisions, exceed its jurisdiction, or follow an unlawful procedure. Accordingly, our review is limited to determining whether the panel's decision to readmit the petitioner was arbitrary or capricious ("fourth ground") or unsupported by material and substantive evidence ("fifth ground").[1] With regard to the fourth ground, a decision is arbitrary and capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." City of Memphis v. Civil Serv. Comm'n, 216 S.W.3d 311, 316 (Tenn. 2007) (quoting Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n, 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993). Reversal is warranted under the fifth ground if the evidence does not "furnish[] a reasonably sound factual basis for the decision being reviewed." Id. (quoting Jackson Mobilphone, 876 S.W.2d at 110-11). Both the fourth and fifth grounds for reversal involve an evaluation of the sufficiency of the evidence. Id. Therefore, each of these standards must be applied in light of Mr. Hughes' burden of proof.

A petitioner seeking readmission to the bar must demonstrate by clear and convincing evidence

> that the attorney has the moral qualifications, competency and learning in law required for admission to practice law in this state and that the resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive to the public interest.

Tenn. R. Sup. Ct. 9, § 19.3 (2007). The panel in this case concluded that Mr. Hughes met this substantial burden. We may disturb the panel's judgment only if we conclude that the panel's determination that Mr. Hughes clearly and convincingly proved each necessary element was arbitrary and capricious or unsupported by material and substantial evidence.

## II.

The panel concluded that Mr. Hughes clearly and convincingly demonstrated that he currently has the moral character to practice law. I fully concur in the majority's conclusion that this aspect of the panel's judgment was supported by substantial and material evidence and was not arbitrary or capricious. Fifteen witnesses attested to the dramatic changes in Mr. Hughes' character. Significantly, the testimony included specific details that confirmed Mr. Hughes' commitment to his sobriety as well as his public and private expressions of remorse and his numerous efforts to make amends for his previous misdeeds. This uncontested evidence of Mr. Hughes' rehabilitation provides a reasonably sound factual basis for the panel's conclusion that Mr. Hughes had clearly and

---

[1] For the reasons stated in the majority opinion, I agree that the amended standard of review, rather than our previous standard, is applicable in the present case.

convincingly demonstrated his moral fitness. Accordingly, the panel's ruling on this issue is not subject to reversal for a lack of substantial or material evidence.

Furthermore, nothing in the record suggests that the panel disregarded the seriousness of Mr. Hughes' prior offenses. To the contrary, the panel's findings of fact explicitly reference the seriousness of Mr. Hughes' misdeeds. In addition, there is nothing inherently unreasonable about the proposition that a corrupt individual may undergo a dramatic transformation of character. Therefore, the panel's conclusion does not disregard any of the facts or circumstances of the case and is firmly based in reason. There is therefore no reason to conclude that the panel's conclusion on this issue is arbitrary or capricious.

The panel also concluded that Mr. Hughes clearly and convincingly demonstrated that he has the requisite competence to practice law. I concur in the majority's conclusion that the panel's judgment on that issue was supported by substantial and material evidence and was not arbitrary or capricious. Several witnesses testified that Mr. Hughes was sufficiently competent to resume the practice of law. There was also evidence that Mr. Hughes had completed 199 hours of continuing legal education, audited an ethics course at the Nashville School of Law, and conducted independent legal research. These facts provide a reasonable factual basis for the trial court's conclusion that Mr. Hughes had provided clear and convincing evidence of his competency to practice law. In addition, the panel's decision was based in reason and did not disregard any relevant facts or circumstances. Therefore, the panel's conclusion was supported by material and substantial evidence and was not arbitrary or capricious. For the reasons stated by the majority opinion, I also agree that the circumstances of this case are sufficient to overcome the presumption that Mr. Hughes must demonstrate his competency by completing the essay portion of the Tennessee bar examination.

I disagree, however, with the majority's analysis of whether Mr. Hughes' reinstatement will have a detrimental effect on the integrity of the bar, the administration of justice, or the public interest. In spite of the grave nature of his offense, the panel found that there was clear and convincing evidence that Mr. Hughes' reinstatement would not have such an effect. The panel's finding was supported by the testimony of several witnesses that, if readmitted, Mr. Hughes would conduct himself in exemplary fashion and would be an asset to the legal community. Several witnesses also noted that Mr. Hughes' future involvement with the bar would better enable him to share his story and help other attorneys avoid his mistakes. Others testified that any doubts members of the public might have about Mr. Hughes' reinstatement could be answered by pointing to the dramatic nature of Mr. Hughes' personal transformation. In my view, this evidence could produce a firm belief in a reasonable person's mind that Mr. Hughes' reinstatement would not be damaging to the standing of the bar, the administration of justice, or the public interest. While reasonable people may disagree with the panel's conclusion, it seems clear to me that the panel's conclusion is amply supported by substantial and material evidence.

Furthermore, the panel's conclusion is consistent with reason and logic. Given Mr. Hughes' efforts to rehabilitate himself and his support from other members of the bar, it was not unreasonable for the panel to conclude that damage to the public perception of the bar would be limited. Although

4

the majority of this Court may have weighed the facts differently, that alone does not make the panel's conclusion unreasonable. In addition, there is nothing in the record to suggest that the panel disregarded any of the relevant facts or circumstances. I therefore fail to see how the panel's decision to reinstate Mr. Hughes was arbitrary or capricious. Accordingly, I would affirm the judgment of the panel.

III.

It is indisputable that the bribery of a witness is among the most egregious transgressions an attorney can commit. Mr. Hughes' crime betrayed the principles of justice and fairness and threatened the public's faith in the integrity of the judiciary. The readmission of an attorney who has committed such a crime undoubtedly carries with it the potential to generate public skepticism and cynicism towards the bench and bar. We have chosen, however, not to make disbarment permanent for even the most serious offenses, opting instead to allow all disbarred attorneys to seek readmission and have the merits of their petitions judged on a case-by-case basis. See Tenn. R. Sup. Ct. 9, §§ 19.2, 19.3. So constituted, our system permits leniency for those who are sufficiently reformed to resume a position of public trust. Of course, the desire for leniency is and must be tempered by our duty to protect the public and the judiciary from those who are unfit to practice law. Accordingly, a petitioner who has committed a crime that undermines the central purposes of our system of justice will naturally have more difficulty demonstrating his or her fitness to resume practice, and such petitioners will be readmitted only rarely.

It is difficult to imagine, however, how a petitioner could put forth a more impressive case for readmission than that presented by Mr. Hughes. The distinguished nature of the witnesses, the specificity of their accounts of Mr. Hughes' contrition and reformation, and the sheer number of persons willing to attest to Mr. Hughes' fitness all point in favor of readmission. It is virtually unquestioned that Mr. Hughes' rehabilitation is authentic and complete. I am therefore concerned that the majority's opinion in this case effectively shuts the door on the ability of certain petitioners to be readmitted. Whatever the merits of this approach, I do not believe it is consistent with the rules governing readmission.

More disturbingly, the majority reaches this result by relying on "this Court's ultimate authority to intercede on a policy basis regarding admission to the bar." When interceding on this basis, this Court will determine the case based on "our own sense of values," however indecipherable those values may be. According to the majority, we are free to exercise this authority whenever "the integrity of the bar and the public trust of our system of justice is at stake." Because the integrity of the bar and the public's trust are implicated in virtually every BPR case, it is impossible to tell how frequently this Court will be tempted to wield its new power.

It was not long ago that we were more modest in the expression of our role. Just recently we held that we are bound to provide a more limited review of a panel's judgment. See Love, ___ S.W.3d at ___. The majority now concludes that our holding in Love does not affect our power to regulate the practice of law. While it is true that we have the inherent power to regulate the practice

of law, it is equally true that we promulgated Tennessee Supreme Court Rule 9 specifically to provide structure and form to our exercise of that power. See Brown v. Bd. of Prof'l Responsibility, 29 S.W.3d 445, 449 (Tenn. 2000). Unmoored from these rules and our precedents interpreting them, our decisions, not merely those of panels or trial courts, are in jeopardy of becoming arbitrary and capricious. Having chosen to exercise our authority by enacting Tennessee Supreme Court Rule 9, it is illogical to invoke that same authority as a basis for ignoring our previous interpretation of the Rule's contents. To do so, as the majority has, is to replace our orderly and principled standard of review with an amorphous standard that essentially empowers this Court to do whatever it chooses in any particular case.

For these reasons, I respectfully dissent.

_____

JANICE M. HOLDER, JUSTICE