IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 11, 2004 Session

## BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE v. EDWARD A. SLAVIN, JR.

Appeal from the Chancery Court for Knox County
No. 154861-3     Richard E. Ladd, Chancellor, by designation

No. M2003-00845-SC-R3-BP  – Filed August 27, 2004

We have this case on direct appeal pursuant to Tennessee Supreme Court Rule 9, section 1.3, from an order of the Chancery Court suspending Edward A. Slavin, Jr., Esq., from the practice of law for three years.  Slavin appeals, raising the following issues:  (1) whether Chancellor Richard E. Ladd erred in refusing to recuse himself; (2) whether Slavin's in-court speech is protected by the First Amendment; and (3) whether the sanctions imposed by the Chancellor are excessive.

Upon careful review of the record and applicable authority, we conclude that Chancellor Ladd did not abuse his discretion in refusing to recuse himself and that the speech at issue does not fall within the protective ambit of the First Amendment.  After a thorough examination of the sanctions, we impose a two-year suspension.  Slavin may, however, apply for reinstatement pursuant to Tennessee Supreme Court Rule 9, section 19.3, at the expiration of one year from date of this opinion.

**Tenn. Sup. Ct. R. 9 § 1.3; Judgment of the Chancery Court Affirmed as Modified**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON and JANICE M. HOLDER, JJ., joined.  WILLIAM M. BARKER, J., not participating.

Edward A. Slavin, Jr., St. Augustine, Florida, and David A. Stuart, Clinton, Tennessee, for the appellant, Edward A. Slavin, Jr.

Laura L. Chastain, Nashville, Tennessee, for the appellee, Board of Professional Responsibility.

**Opinion**

**I. Facts and Procedural History**

Edward A. Slavin, Jr., Esq., ("Slavin") was licensed to practice law in Tennessee in 1987, and he has represented many "whistle-blower" clients before federal agencies. Three judicial officers lodged complaints against Slavin with the Board of Professional Responsibility ("BPR"). The complaints, as summarized, are as follows: Dale Workman ("Workman"), Chancellor for the Sixth Judicial District, alleged that Slavin filed a motion for a new trial and for recusal. In these pleadings, Workman stated that Slavin accused him of rushing his consideration of the case on a day when he appeared to be preoccupied, taking a two-hour lunch for personal business, unfairly restricting the amount of time for cross-examination of the defendant's witness, refusing to allow a rebuttal witness to be called, taking an inadequate amount of time for a rushed reading of portions of the record, mocking and trivializing the medical treatment provided to the plaintiff, showing bias and prejudice by making pejorative remarks about "press releases," and being rude. According to Workman, Slavin stated that Workman "is apparently a chain smoker, who's [sic] smoke filled chambers Mrs. Campbell and the parties' counsel were obliged to enter" causing Mrs. Campbell restricted breathing in court. According to Workman, Slavin also stated that "[t]he trial court's lifestyle choice and personal opinions should not be permitted to deny Ms. Campbell a fair trial."

Additionally, Curtis L. Collier ("Collier"), Judge of the United States District Court (Eastern District, Tennessee), complained to the BPR about Slavin's conduct and speech during the trial of Lockheed Martin Energy Systems, Inc. v. Slavin, 190 F.R.D. 449 (E.D. Tenn. 1999). According to Collier, Lockheed Martin Energy Systems ("Lockheed") brought suit against Slavin to compel him to comply with a Department of Labor order to repay attorney's fees and expenses. In that case, Slavin filed a seventeen-page response "replete with unnecessary, baseless, irrelevant, and frivolous claims, defenses, and legal contentions." Lockheed's counsel, Wilson Horde, Esq., ("Horde") filed a petition for sanctions pursuant to Federal Rule of Civil Procedure 11. In response to the Rule 11 petition, Slavin repeated the substance of what he had included in his previous answer and "added more irrelevant allegations." As an attachment to the response, Slavin included a nine-page "declaration" from District Attorney General James Ramsey executed on April 27, 1994, in which Ramsey stated that he believed that his (Ramsey's) law license had been suspended by the Tennessee Supreme Court because of actions taken by Horde. Collier viewed this assertion as a further attack on Horde and Lockheed.

Collier included in his complaint that on the date of the scheduled Rule 11 hearing in the Lockheed case, Slavin requested a continuance. Then, on the date of the rescheduled hearing, Slavin failed to appear. Slavin's attorney offered no tenable explanation for Slavin's absence. The court found that "[i]t was faced with not just an attorney who has filed baseless, frivolous and unprofessional pleadings and responses to motions, but an attorney who has done so repeatedly, flagrantly, and in a manner which reflects a callous disregard for the proper and efficient functioning of the Court and also reflects a sense of disrespect for the authority of a judicial system and the obligations of the legal community." Also, the court ordered Slavin to provide additional

-2-

information–an order with which Slavin did not comply.  The court stated, "Thus, it appears even in the face of very serious sanctions and a direct order from the Court, Mr. Slavin continues to demonstrate a lack of respect for the Court and its authority."

The complaint of John M. Vittone ("Vittone"), Administrative Law Judge for the United States Department of Labor, alleged that Slavin had been unprofessional in appearances before the court and had used the peer review process to harass the judges.  He stated that several judges had invoked their authority to permanently prevent Slavin from representing clients in cases in which they preside.  Vittone cited instances in which Slavin asserted that the Administrative Review Board ("ARB")[1] decision in a matter "ranks with the Dred Scott decision among the injustices in American History" and is a "disgrace to the human race."  He also stated that Slavin left voicemail messages calling opposing counsel a "red neck peckerwood" and describing counsel collectively as "Nazis." Vittone claimed that Slavin's activities went beyond criticism of the judiciary and were "transparent attempts to use the legal process to harass and/or punish judges who issued adverse rulings."

The above complaints provided the basis for a petition filed by the BPR against Slavin on August 4, 2000.  On May 22, 2001, the BPR filed a "Supplemental Petition for Discipline" based on the complaint of Rudolf L. Jansen ("Jansen"), an Administrative Law Judge for the United States Department of Labor.  According to the complaint, Jansen issued a recommended decision and order granting summary judgment in a matter in which Slavin had represented two persons.  On March 16, 1999, Slavin appealed to the ARB, and his pleading contained comments which Jansen found to be offensive.  Those comments included:  referring to Jansen as "[p]etty, barbarous and cruel"; "Recommended Decision is a stench in the nostrils of the Nation"; "Shows complete contempt for First Amendment Values"; "Jansen . . . is no better than Respondents–he is a retaliator"; and "Disgraces his judicial office."  In its decision, the ARB noted that Slavin "has again engaged in personal and vitriolic attacks on a Department of Labor Administrative Law Judge."  Slavin then requested that the Inspector General investigate Jansen's conduct in the case.

On August 30, 2001, the BPR filed a "Second Supplemental Petition for Discipline."  This petition was based on complaints made by four clients Slavin had represented in a suit against their employer, the U.S. Department of Energy.  The clients alleged that Slavin had been unprepared and had hindered their cases by failing to provide effective assistance of counsel.  In addition, they alleged that Slavin had been antagonistic toward the judge in their case to the extent that the judge had barred him from appearing in cases before her.  Moreover, they charged that Slavin filed an appeal for one client even though he had been instructed not to, had given false information to a judge about a client's health, had failed to return documents as requested, and had refused to follow the clients' directions regarding settlement.

The second supplemental petition included also the complaint of Debra Thompson, Esq., ("Thompson"), who stated that Slavin had made disparaging comments about her.  She alleged that

---

[1]The Administrative Review Board of the United States Department of Labor has the authority of the Secretary of Labor and other deciding officials to issue final agency decisions under a broad range of federal labor laws.

Slavin had called her a "harridan"[2] in the presence of her client and the court reporter. Thompson also alleged that Slavin had called her "condescending, hierarchical, uncivil, unkind, and uncooperative."

A hearing pursuant to Tennessee Supreme Court Rule 9, section 8, was conducted on February 12, 2002. The Hearing Committee sustained the complaint of Collier alleging that Slavin had failed to follow orders of the court as violations of Tennessee Supreme Court Rule 8, Disciplinary Rule[3] ("DR") 1-102(A)(1), DR 1-102(A)(5), DR 7-102(A)(8), DR 7-106(A), and DR 7-106(C)(6) (2002). Regarding DR 7-106(C)(6), the Hearing Committee found that Slavin, "by ignoring the Orders of Judge Collier engaged in undignified and discourteous conduct which is degrading to a tribunal."

The Hearing Committee also sustained allegations that Slavin had made false statements regarding a client's illness, had made false statements during a deposition with regard to a client's identity as an investigator, and had failed to communicate with clients and return their records. Consequently, Slavin was found to have violated DR 1-102(A)(1), DR 1-102(A)(4), DR 1-102(A)(5), DR 7-101(A)(2), and DR 7-102(A)(8). The Hearing Committee, however, dismissed the charge under DR 7-106(C)(6) because Slavin's expressions were protected by the right to free speech.

The Hearing Committee dismissed the complaints of Vittone, Workman, and Jansen in their entireties. Regarding the dismissal of the charges under DR 7-106(C)(6), the Hearing Committee found that while Slavin's actions were "undignified and discourteous," the Board did not carry its burden of proving false statements, and thus, Slavin's expressions were protected by the First Amendment. Ramsey v. Bd. of Prof'l Responsibility, 771 S.W.2d 116 (Tenn. 1989).

The Hearing Committee also dismissed Thompson's complaint in its entirety. Regarding the alleged violation of DR 7-106(C)(6), the Hearing Committee found that Slavin's expressions were protected by the First Amendment.

The Hearing Committee found as a mitigating factor that Slavin did not have a record of prior disciplinary action. It found as an aggravating factor that his violations of the Disciplinary Rules were multiple. The Hearing Committee concluded: "For violations of the provisions addressed above, the Hearing [Committee] finds that Respondent should be given a public censure."

On May 31, 2002, the BPR filed a "Petition for Writ of Certiorari" in the Chancery Court for Knox County pursuant to Tennessee Supreme Court Rule 9, section 1.3. The Chief Justice of this

---

[2] A shrewish woman. Webster's II New College Dictionary 506 (2001).

[3] The proceedings in this case are governed by the Code of Professional Responsibility previously set forth in Rule 8 of the Tennessee Supreme Court Rules (2002). The Code was replaced on March 1, 2003, by the Rules of Professional Conduct.

Court assigned Richard E. Ladd, Chancellor, Second Judicial District, to hear the case as required by Tennessee Supreme Court Rule 9, section 1.5. A hearing was conducted on December 10, 2002; Slavin did not attend the hearing but was represented by counsel. After a brief colloquy between Ladd and Slavin's attorney, David Stuart, Esq., ("Stuart"), the remainder of the hearing was consumed by discussion and the introduction of exhibits. No testimony was adduced during this hearing.

Following the hearing, Ladd issued a memorandum opinion. It appears that although Ladd agreed with the Hearing Committee's findings of facts, he disagreed with the Hearing Committee's legal conclusions drawn from those facts. He stated, "I find that the acts of Mr. Slavin are not protected by the First Amendment in this case."

Ladd disagreed with the Hearing Committee also with regard to the complaint of Jansen, finding "by a clear preponderance of the evidence, in fact uncontested evidence, a violation of Disciplinary Rules." Ladd stated that in the case underlying Jansen's complaint, the opposing side filed a motion for summary decision. Slavin filed nothing in response in that case, and Jansen granted a summary decision. According to Ladd, Slavin then filed "a 27 page document entitled: Complainant's Petition for Review, Motion for Summary Reversal, Motion for Oral Argument, with Motion to File 45 Page Opening Brief; Investigative Request, Disqualification Appeal by Today to the Administrative Review Board, with copies to many others, including the Inspector General, the Secretary of Labor, the Honorable John M. Vittone, Chief Administrative Law Judge." The ARB concluded that the case was frivolous.

Ladd referred to the ARB's Final Decision and Order in which the ARB "lists 18 examples of personal insults which Mr. Slavin used against Judge Jansen in his motion." Ladd stated, "Without even considering whether these representations are truthful or not, the so-called motion and brief . . . to this Court, is a clear violation of DR 1-102(A)(5), engaging in conduct that is prejudicial to the administration of justice, and DR 7-106(C)(6), engaging in undignified or discourteous conduct which is degrading to a tribunal." Thus, Ladd concluded that "the acts of Mr. Slavin are not protected by the First Amendment in this case."

Regarding Vittone's complaint, Chancellor Ladd stated the following:

> Judge Vittone testified that four or five Administrative Law Judges had barred Mr. Slavin from appearing before them due to his conduct in various cases. Judge Vittone stated that Mr. Slavin in four to five instances has requested a Peer Review for Judge misconduct, similar to the Tennessee Court of Judiciary.

> Judge Vittone advised Mr. Slavin twice that the conduct–that his conduct was impermissible in using the Peer Review procedure to try to get a reversal on a question of law, an appealable issue. This is corroborated by Mr. Slavin's expert witness and good friend, Retired Judge Nahum Litt, who testified that he had told Mr. Slavin that he was improperly using the Peer Review process on appealable

matters.

And yet being advised by the Chief Judge and his good friend who was a retired Chief Judge, he continued to do so. I find that Mr. Slavin, by using the Peer Review process in the manner in which he did, was systematically harassing and attempting to intimidate judges by his action. And in fact he was successful in that four or five judges barred him from appearing before them, which, apparently, Administrative Law Judges have the power to do, which resulted in getting rid of those judges on hearing any of his, Mr. Slavin's, cases.

The Court finds that the acts of Mr. Slavin violate Disciplinary Rule 1-102(A)5, engaging in conduct that is prejudicial to the administration of justice.

Ladd found by a preponderance of the evidence that the Hearing Committee erred in dismissing Workman's complaint. He stated that Slavin's conduct with regard to Workman violated DR 7-106(C)(6), engaging in undignified and discourteous conduct which is degrading to a tribunal, and is not protected free speech. He noted that Slavin's Corrected Motion for a New Trial in that case "pretty well speaks for itself on the Court's finding."

Regarding Thompson's complaint, Ladd found that Slavin violated DR 7-102(A)(1) because "his actions would serve merely to harass another person or a fellow lawyer." He agreed with the hearing panel's findings regarding Slavin's clients. He found that Slavin's most serious violation was that of DR 7-101(A)(4)(c) which provides that lawyers shall not prejudice or damage the client during the course of the professional relationship. He also referred to DR 1-102(A)(5) which provides that a lawyer shall not engage in conduct that is prejudicial to the administration of justice. He stated that "by [Slavin's] actions, he is stealing from the client." Ladd noted the testimony of Judge Nahum Litt ("Litt") who "described how Mr. Slavin takes cases with major elements missing." He referred to additional testimony by Litt in which he stated, "The Peer Review was to cover matters not appealable; however, in his opinion, most of what Mr. Slavin filed in Peer Review were appealable issues."

Ladd ordered that Slavin be suspended from the practice of law for three years and that before he applies to the Supreme Court for readmittance, he must "submit some kind of proof to the Supreme Court of a knowledge of how to properly represent a client and subordinate his own feelings in the practice of his law." He stated that Slavin's actions "could be grounds for disbarment," but he found "a glimmer of hope" in Slavin because he is industrious and has a good mind. However, he questioned Slavin's judgment.

## II. Standard of Review

Slavin is before this Court as a matter of right pursuant to Tennessee Supreme Court Rule 9, section 1.3, which provides the following:

Either party dissatisfied with the decree of the circuit or chancery court may prosecute an appeal direct to the Supreme Court where the cause shall be heard upon the transcript of the record from the circuit or chancery court, which shall include the evidence before the hearing committee.

In addition, "our review of this cause is de novo on the record of the trial court, and to the findings of the trial court there is attached a presumption of correctness unless the evidence preponderates against those findings." Sneed v. Bd. of Prof'l Responsibility, 37 S.W.3d 886, 890 (Tenn. 2000).[4]

## III. Analysis

In this appeal, Slavin contends the following: (1) that Ladd erred by refusing to recuse himself; (2) that Slavin's in-court statements were protected by free speech; and (3) that Ladd erred by increasing the sanction imposed by the Hearing Committee.

### A. Recusal

Concerning the recusal issue, whether recusal is warranted is left to the discretion of the trial judge, and such decision will not be reversed absent a clear abuse of discretion on the face of the record. Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564 (Tenn. 2001). The record in this case contains an exchange which occurred at the beginning of the hearing held on December 10, 2002, a hearing at which Slavin was not present.[5] The exchange, between Ladd and Slavin's attorney, was as follows:

> THE COURT: And you are Mr. Stuart?
> MR. STUART: Yes, Your Honor, David Stuart from the Anderson County Bar.
> THE COURT: All right. Born and raised in Anderson County, Mr. Stuart . . . I was.
> MR. STUART: Oh, you were. Really? Oh, okay.
> THE COURT: Born in Oliver Springs, grew up in Norris.
> MR. STUART: Is that right? Well, it is very nice to meet you.
> THE COURT: My father was Purchasing Agent for a period of time.
> MR. STUART: Oh, really?

---

[4]As noted in Sneed v. Board of Professional Responsibility, 37 S.W.3d 886, 890 n.14 (Tenn. 2000), "Tennessee Supreme Court Rule 9, Section 1.3, does not explicitly provide for de novo review upon the record of the trial court, with a presumption of correctness unless the preponderance of the evidence is contrary to the findings." According to Sneed, this standard is inferred from the following sources: Tenn. R. App. P. 13(d); Murphy v. Bd. of Prof'l Responsibility, 924 S.W.2d 643, 647 (Tenn. 1996); Gillock v. Bd. of Prof'l Responsibility of Supreme Court, 656 S.W.2d 365, 367 (Tenn. 1983); and Scruggs v. Bracy, 619 S.W.2d 101, 103 (Tenn. 1981). Essentially, we are reviewing the record of the Hearing Committee in that no testimony was adduced in the trial court.

[5]This hearing was, apparently, the appeal of right from the judgment of the hearing committee.

THE COURT: In Anderson County.

MR. STUART: I met him. I was County Attorney for a long time, and he testified–He had just left Purchasing Agent when I became County Attorney, and he testified. I thought you looked familiar. That must be the reason why.

On December 16, 2002, six days after the hearing, Stuart sent Ladd a letter stating that Slavin intended to file a motion for Ladd's recusal. The letter suggested that Ladd may have residual bias because of Stuart's efforts to impeach Ladd's father in a case tried in 1983.[6] The suggestion is based on Stuart's statement that Slavin had supplied documents to Stuart to be used in an effort to impeach Ladd's father, a witness in the case. Additionally, Stuart suggests in his letter that Ladd's impartiality may reasonably be questioned.

On December 30, 2002, Ladd filed an affidavit[7] in which he denied any personal knowledge of Slavin or of Stuart. Additionally, he stated that he had never heard of the Clinton Bus Co. case. He said, "In summary, prior to receiving the letter of December 16th, I had no knowledge whatsoever of anything mentioned about the case in Mr. Stuart's letter." Moreover, Ladd explained that his father was eighty-nine years old and due to a series of strokes and dementia could not recall any case in which he may have testified. Finally, he stated that prior to reading the letter of December 16, 2002, he had no knowledge of ever having seen or heard of a local weekly tabloid entitled the "Appalachian Observer" edited by Slavin.

On January 3, 2003, Slavin filed a motion requesting that Ladd recuse himself in this case.[8] He also filed a motion for a new trial. On February 28, 2003, Ladd entered an order denying the motion for a new trial and the motion for recusal.

---

[6]Clinton Bus Co., et al. v. Anderson County Bd. of Educ., Anderson County Docket No. E-8362.

[7]The affidavit stated the following:

I. I had no personal knowledge of the respondent, Edward A. Slavin, Jr., Esquire or his counsel, David A. Stuart, Esquire, until I received the order appointing me to hear this case signed by Chief Justice Frank F. Drowota, III, that was entered on the 19th day of July, 2002.

II. My father, A. B. Ladd, was at one time purchasing agent for Anderson County, Tennessee and retired over 25 years ago. I have lived and practiced law or presided as Chancellor in Sullivan County since December 1963. I had never heard of the case Clinton Bus Company, et al, vs. Anderson County Board of Education, Anderson County Chancery Court Docket No. E8352 prior to Mr. Stuart's letter to me dated December 16, 2002. I have no memory of my father A. B. Ladd ever mentioning the case nor the fact that he testified in the case, nor the nature of his testimony, nor the fact that he was cross-examined by Mr. Stuart. In summary, prior to receiving the letter of December 16th, I had no knowledge whatsoever of anything mentioned about the case in Mr. Stuart's letter.

III. My father, A. B. Ladd is now 89 years of age and due to a series of strokes and dementia, [he] cannot even tell me what year he retired, let alone recall any case in which he may have testified.

Thus, I have not been able to determine from him whether he ever told me about the case.

IV. I have no knowledge of ever seeing or hearing of a local weekly tabloid entitled the "Appalachian Observer" edited by Mr. Slavin until the letter of December 16, 2002.

[8]As stated, this motion was filed after Ladd had heard the appeal.

On appeal, Slavin contends that Ladd erred in refusing to recuse himself. In response, the BPR contends that Slavin's failure to seek recusal in a timely manner has foreclosed this issue. Indeed, the BPR suggests that Slavin has attempted to manipulate the recusal issue to gain procedural advantage.

"Parties may lose the right to question a judge's impartiality if they attempt to manipulate the impartiality issue to gain procedural advantage." Davis v. Tenn. Dep't of Employment Sec., 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999). "[T]he failure to seek recusal in a timely manner results in a waiver of a party's right to question a judge's impartiality." Id. Even though there is evidence to support a finding that the recusal issue was waived for failure to raise it in a timely manner, we nevertheless prefer to address the issue.

"The right to a fair trial before an impartial tribunal is a fundamental constitutional right." State v. Austin, 87 S.W.3d 447, 470 (Tenn. 2002). Moreover,

> Article VI, § 11 of the Tennessee Constitution provides that "no Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested." The purpose of this constitutional provision is to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality or favor. Chumbley v. People's Bank & Trust Co., 165 Tenn. 655, 659, 57 S.W.2d 787, 788. (1933).

State v. Benson, 973 S.W.2d 202, 205 (Tenn. 1998).

Tennessee has also recognized that "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." Kinard v. Kinard, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). Thus, recusal is also appropriate "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Davis v. Liberty Mut. Ins. Co., 38 S.W.3d at 564-65 (quoting Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). "Hence, the test is ultimately an objective one since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." Id. We note, however, that the mere fact that a judge has ruled adversely to a party or witness in a prior proceeding is not grounds for recusal. Id.

Ladd has included in the record an affidavit outlining the basis for his refusal to recuse himself. It is entirely adequate and, we think, dispositive of the issue. Accordingly, this issue is without merit.

### B. First Amendment

Slavin next contends that the BPR, Department of Labor, and Department of Energy have

sought sanctions against him for speech protected by the First Amendment. The Hearing Committee found that the in-court statements complained of, while "undignified and discourteous," were protected speech under First Amendment principles. The trial court, however, reached the opposite conclusion, ruling that Slavin's statements were not protected by the First Amendment.

Specifically, Ladd concluded that Slavin's speech with regard to Workman violated DR 7-106(C)(6) by Slavin's having engaged in undignified and discourteous conduct degrading to a tribunal. He concluded, as to Slavin's speech toward Jansen, that Slavin had violated DR 1-102(A)(5) and DR 7-106(C)(6). With regard to Vittone, Ladd concluded that Slavin had manipulated the Peer Review process to "systematically harass[] and attempt[] to intimidate judges" and by so doing, had violated DR 1-102(A)(5). Finally, Ladd found that Slavin's conduct toward Thompson constituted a violation of DR 7-102(A)(1) by his having engaged in conduct "when it is obvious that such action would serve merely to harass or maliciously injure another."

The free speech clause of the First Amendment to the United States Constitution is applicable to the states through the Fourteenth Amendment and provides that "Congress shall make no law . . . abridging the freedom of speech." Article I, section 19, of the Tennessee Constitution similarly provides that "[t]he free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty."

In the context of judicial proceedings,[9] an attorney's First Amendment rights are not without limits. Although litigants and lawyers do not check their First Amendment rights at the courthouse door, those rights are often subordinated to other interests inherent in the judicial setting. See Gentile v. State Bar of Nev., 501 U.S. 1030, 1071 (1991); United States Dist. Court v. Sandlin, 12 F.3d 861, 866 (9th Cir. 1993); Koster v. Chase Manhattan Bank, 93 F.R.D. 471, 476 (S.D.N.Y. 1982); State v. Carruthers, 35 S.W.3d 516, 560-61 (Tenn. 2000). Thus, while we find that legitimate criticism of judicial officers is tolerable, "an attorney must follow the Rules of Professional Conduct when so doing." Shortes v. Hill, 860 So. 2d 1, 3 (Fla. Dist. Ct. App. 2003). A lawyer is not free to "seek refuge within his own First Amendment right of free speech to fill a courtroom with a litany of speculative accusations and insults." United States v. Cooper, 872 F.2d 1, 3 (1st Cir. 1989).

The United States Supreme Court stated:

> It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to "free speech" an attorney has is extremely circumscribed. An attorney may not, by speech or other conduct, resist a ruling of the trial court beyond the point necessary to preserve a claim for appeal.

---

[9]We note that our Court held in Ramsey v. Board of Professional Responsibility, 771 S.W.2d 116, 122 (Tenn. 1989) that an attorney who made out-of-court statements to the media regarding judicial proceedings was not subject to discipline, and the statements were protected by the First Amendment. That case, however, is distinguishable. In the case under submission, the statements at issue were made during in-court judicial proceedings.

Gentile, 501 U.S. at 1071.

"The First Amendment does not preclude sanctioning a lawyer for intemperate speech during a courtroom proceeding." Jacobson v. Garaas (In re Garaas), 652 N.W.2d 918, 925 (N.D. 2002) (emphasis added). Commenting on Gentile in a disciplinary proceeding, the Supreme Court of Missouri concluded:

> An attorney's free speech rights do not authorize unnecessary resistance to an adverse ruling . . . . Once a judge rules, a zealous advocate complies, then challenges the ruling on appeal; the advocate has no free-speech right to reargue the issue, resist the ruling, or insult the judge.

In re Coe, 903 S.W.2d 916, 917 (Mo. 1995).

In Kentucky Bar Association v. Waller, 929 S.W.2d 181, 183 (Ky. 1996), the Supreme Court of Kentucky observed that the statements need not be false to pursue disciplinary action:

> Respondent appears to believe that truth or some concept akin to truth, such as accuracy or correctness, is a defense to the charge against him. In this respect he has totally missed the point. There can never be a justification for a lawyer to use such scurrilous language with respect to a judge in pleadings or in open court. The reason is not that the judge is of such delicate sensibilities as to be unable to withstand the comment, but rather that such language promotes disrespect for the law and for the judicial system. Officers of the court are obligated to uphold the dignity of the Court of Justice and, at a minimum, this requires them to refrain from conduct of the type at issue here.

Thus, an attorney's speech may be sanctioned if it is highly likely to obstruct or prejudice the administration of justice. "These narrow restrictions are justified by the integral role that attorneys play in the judicial system, which requires them to refrain from speech or conduct that may obstruct the fair administration of justice." Office of Disciplinary Counsel v. Gardner, 793 N.E.2d 425, 428-29 (Ohio 2003).

Accordingly, we conclude that Slavin's in-court remarks were not protected by the First Amendment. By this holding we intend to limit an attorney's criticisms of the judicial system and its officers to those criticisms which are consistent in every way with the sweep and the spirit of the Rules of Professional Conduct. See Fla. Bar v. Ray, 797 So. 2d 556, 560 (Fla. 2001).

## C. Sanctions

For his final issue, Slavin contends that Ladd erred by imposing a three-year suspension from the privilege to practice law. Having concluded that the violations found by Ladd were proper, we consider sanctions imposed in similar cases. In Farmer v. Board of Professional Responsibility, 660

S.W.2d 490, 491-93 (Tenn. 1983), this Court found that the attorney should be disciplined for using "scurrilous and improper language in briefs which he himself filed." In that case, we concluded that the attorney "deliberately chose to use language and tactics which cannot be tolerated in the legal profession" and affirmed the Hearing Committee's decision to suspend the attorney for sixty days. Id. at 493.

Although this Court concluded that the attorney was not subject to sanctions for his out-of-court statements to the media in Ramsey v. Board of Professional Responsibility, 771 S.W.2d 116, 122-23 (Tenn. 1989), we did conclude that the attorney acted in a manner prejudicial to the administration of justice. In that case, the attorney failed to abide by court orders, failed to respond to questions from the court while appearing before the court, and slammed courtroom doors during hearings. Id. at 123. Thus, we imposed a sanction of 180 days, with all but 45 days suspended. Id.

In Galbreath v. Board of Professional Responsibility, 121 S.W.3d 660 (Tenn. 2003), we held that a thirty-day suspension was warranted for an attorney's misconduct that included attempts to subvert the legal process. In that case, the attorney, dissatisfied with a judge's rulings, began a calculated campaign through threats and intimidation to force the judge's recusal. Id. at 666.

Additionally, we note similar cases in other jurisdictions. In Kentucky Bar Association v. Waller, 929 S.W.2d 181, 183 (Ky. 1996), the Supreme Court of Kentucky ordered a six-month suspension for an attorney's comments made in a written memorandum submitted to a trial court. The Supreme Court of Kentucky described the memorandum as follows:

> After the appointment of Judge Harris, Waller filed a motion to set aside the earlier temporary injunction. On June 21, 1994, Waller filed a memorandum styled as "Legal Authorities Supporting the Motion to Dismiss" which contained the following introductory language: Comes defendant, by counsel, and respectfully moves the Honorable Court, much better than that lying incompetent ass-hole it replaced if you graduated from the eighth grade . . . .

Id. at 181.

The Supreme Court of Ohio, in Office of Disciplinary Counsel v. Gardner, 793 N.E.2d 425, 433 (Ohio 2003), imposed a six-month suspension on an attorney for comments made in a written motion. The Court described the motion as follows:

> In a motion seeking reconsideration or, in the alternative, certification of the case as a conflict to this court, respondent accused the panel that decided his client's appeal of being dishonest and ignoring well-established law. He declared that the panel had issued an opinion so "result driven" that "any fair-minded judge" would have been "ashamed to attach his/her name" to it. He then added that the panel did not give "a damn about how wrong, disingenuous, and biased its opinion is."

Id. at 427.  In upholding the six-month suspension, the Supreme Court of Ohio stated:

> An attorney's speech may be sanctioned if it is highly likely to obstruct or prejudice the administration of justice . . . .  These narrow restrictions are justified by the integral role that attorneys play in the judicial system, which requires them to refrain from speech or conduct that may obstruct the fair administration of justice.

Id. at 429.

As we continue our de novo consideration of the sanctions imposed, we note a dramatic increase in the punishment imposed by the trial court beyond that imposed by the Hearing Committee.  We think this difference is easily explained by the fact that the trial court reinstated several violations that had been dismissed by the Hearing Committee.

Although we are much impressed with Slavin's intellect and legal skill, what does not impress us is his apparent defiance in refusing to respect the line separating, in the judicial context, tolerable criticism from unacceptable speech.  He has trampled upon that line, and indeed by so doing has propelled himself into the quagmire of unacceptable speech.

Accordingly, we hereby suspend Slavin from the practice of law for a period of two years from date of this opinion.  Slavin may petition for reinstatement under Supreme Court Rule 9, section 19.3, at the expiration of one year from date of this opinion.  It is further ordered that Slavin shall comply in all respects with Tennessee Supreme Court Rule 9, and specifically with section 18 regarding the obligations and responsibilities of suspended attorneys.  Costs of this review are taxed to the appellant, Edward A. Slavin, Jr., for which execution may issue, if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE