# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned March 19, 2013

# IN THE MATTER OF: JACOB H. C.

**Appeal from the Juvenile Court for Williamson County**
**No. 80103      Sharon Guffee, Magistrate**

---

**No. M2013-00699-COA-10B-CV - Filed March 25, 2013**

---

Petitioner in a proceeding to modify child support filed a motion for recusal with the trial judge alleging that the judge was a personal friend and had a business relationship with the father of one of the parties. The trial judge denied the motion and the petitioner then filed this interlocutory appeal as of right pursuant to Tenn. Sup. Ct. R. 10B. We affirm the denial of the motion for recusal.

**Tenn. R. App. P. 3 Appeal as of Right/Tenn. Sup. Ct. R. 10B; Judgment of the
Juvenile Court Affirmed**

RICHARD H. DINKINS, J. delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S. and FRANK G. CLEMENT, J., joined.

Jeffrey Spark, Nashville, Tennessee, for the appellant, B. C.

Alisha Guertin Warner, Phillip R. Newman, Franklin, Tennessee, for the appellee, S. B. C.

## OPINION

This appeal arises out of the denial of a motion to recuse filed by B. C., father of Jacob H. C. ("Father"), who had initiated a proceeding on January 22, 2013 to modify child support; S. B. C., mother of Jacob ("Mother"), filed an answer to the petition and a counter-petition on February 8, seeking to have Father held in civil contempt.

On February 25 Father filed a motion asking the court to recuse itself in accordance with Tenn. R. Sup. Ct. 10B; the motion was accompanied by the affidavit of Father's wife. A hearing was held on the motion on March 11, and on March 15 the court entered an order as required by Tenn. Sup. Ct. R. 10B, § 1.03, denying the motion and detailing the basis upon

which the motion was denied.  A Petition for Recusal Appeal was filed with this court on March 18.

## I.  Appeals Under Tenn. Sup. Ct. R. 10B

Appeals from orders denying motions to recuse are governed by Section 2 of Tenn. Sup. Ct. R. 10B.  Under the rule, an accelerated interlocutory appeal of the denial of the motion is available if filed within fifteen days of entry of the trial court's order.  Tenn. Sup. Ct. R. 10B § 2.02.[1]  If this court determines that no answer is needed from the other parties to the case, we may act summarily on the appeal.  *Id.* § 2.05.  This court has the discretion to decide the appeal without argument.  *Id.* § 2.06.

In accordance with Tenn. Sup. Ct. R. 10B §§ 2.05 and 2.06, we have determined that an answer to the petition, further briefing and oral argument are not necessary.[2]  Accordingly, we will proceed to review the trial court's order, applying the *de novo* standard of review.  Tenn. Sup. Ct. R. 10B § 2.06.

## II.  Grounds for the Trial Judge's Recusal

As grounds for recusal, Father asserts that the trial judge is a personal friend of and has a business relationship with Mother's father and, consequently, that the judge's impartiality "might be reasonably questioned" within the meaning of Tenn. R. Sup. Ct. 10, RJC 2.11.  The following facts relative to the assertion are contained in the affidavit of Father's wife:

---

[1]  Tenn. Sup. Ct. R. 10B § 2.02 provides that the appeal is to be filed "in the appropriate appellate court."  This case originated as a proceeding to establish paternity and set support as provided in Tenn. Code Ann. § 36-2-301, *et seq*.  Pursuant to Tenn. Code Ann. § 36-2-315, appeals from final orders in such proceedings are to this court; consistent with the statute, this is the appropriate court for interlocutory appeals of this nature.

[2]  Attached as exhibits to the Petition for Recusal Appeal were copies of: (1) the petition to modify child support, (2) the answer to the petition to modify and counter-petition for contempt, (3) the order entered October 1, 2012, from which the modification was sought, (4) the answer to the counter-petition, (5) the motion for recusal filed in the trial court, (6) affidavit of Father's wife, (7) the order denying the motion to recuse, (8) a transcript of the hearing on recusal motion, (9) the order entered on June 20, 2011, establishing paternity and setting support and parenting time, and (10) the order entered January 13, 2012, adopting the final parenting plan.  In addition, attached as an exhibit to the petition was an affidavit of Father which was sworn to on March 17 and not filed in the trial court.  These materials provide a sufficient factual context for resolution of the issues presented in this appeal.

On August 14, 2012, I was present in Williamson County Juvenile Court for a custody, parenting time and child support trial between my husband and [Mother] regarding their child [Jacob].

At the time in question, I was waiting outside the courtroom. Also present was [Mother's father]. We were sitting next to each other on a bench.

[The trial judge] came out of the hallway in the back where the judge's chambers and other offices are located. [Mother's father] addressed [the judge] by her first name and said "Hi!" [The judge] then went to the security desk and picked up some papers. When [the judge] walked back, [Mother's father] spoke to her again and congratulated her on being appointed as the Juvenile Court Judge. He told her that he was "glad that he could help" or words to that effect. He asked her when she was getting sworn in. She told him she thought it would be sometime in January. He then told her to let him know when it was as he "didn't want to miss it." [The judge] did not appear to want to have a long conversation, in fact she appeared either in a rush or uncomfortable with the conversation.

During the conversation, he addressed her by her first name. It was clear from the tone of their conversation and the way they addressed each other and interacted with one another that they knew each other personally and were friends.

In addition, Father's affidavit states that the trial judge presided over certain aspects of the paternity proceeding as a Juvenile Court Magistrate from May through November of 2011; that Mother's father was present through those proceedings and that neither Father nor his counsel was advised that "[the judge] was a friend of or otherwise knew [Mother's father]."[3]

At the hearing on the motion, the judge stated:

We do know each other. We have worked together for 16 years. . . .
I disagree [that the judge could not be impartial]. And the reason I disagree is I haven't seen [Mother's father] for the better part of probably seven or eight years. I don't see him on a regular basis. I don't talk with him. When I see him I say "hi", I call him by his first name – just as I call Daniel – that deputy sitting back there – by his first name. I know a lot of officers Mr. Spark. I

---

[3] Father also states that the judge's statements at the hearing on the motion to recuse and in its order denying the motion that the judge did not know that Mother's father had a daughter until "this case began" is "misleading," since the judge's reference was to the modification proceeding while "the case" included the proceedings in 2011.

think I can be fair and impartial in this matter just as I could for anyone else that walks into my courtroom. . . .

In the order denying the recusal motion, the court made the following findings:

The Court knows ever [sic] three hundred (300) law enforcement officers and has worked with many of them over the last sixteen years as an Assistant District Attorney, private attorney, Magistrate, and Judge. It would be impractical and unnecessary to grant a recusal in any case involving law enforcement.

The Court has known [Mother's father] with the Brentwood Police Department for sixteen years. Until this case began, the Court was unaware he had a daughter, demonstrating the lack of a personal relationship. Further, the Court has only had professional contact with [Mother's father] and virtually no contact with him for the last seven or eight years.

## III. Discussion

In his Petition, Father argues that the fact that the judge has known Mother's father for sixteen years and is on a first name basis with him gives the appearance of impropriety. He further contends that the statement of Mother's father, as recounted in Father's wife's affidavit, "that he was 'glad that he could help' or words to that effect" and to "invite himself to the swearing in ceremony" undermines his confidence in the impartiality of the judge.

Father alleges specific concerns arising under Rules 1.2 and 2.11(A) of the Rules of Judicial Conduct. Rule 1.2 states that a judge "shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." The portions of Rule 2.11(A) which Father asserts are pertinent to this appeal are (1) and (4), which state:

A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.
\* \* \*
(4) The judge knows or learns by means of a timely motion that a party, a party's lawyer, or the law firm of a party's lawyer has made contributions or

given such support to the judge's campaign that the judge's impartiality might reasonably be questioned.

The necessity that litigants have confidence in the impartiality of judges is fundamental, such that the principle is reflected in our Constitution. As noted in *Kinard v. Kinard*:

> Litigants, as the courts have often said, are entitled to the "cold neutrality of an impartial court." *See Leighton v. Henderson*, 220 Tenn. 91, 98, 414 S.W.2d 419, 421 (1967); *Chumbley v. People's Bank & Trust Co.*, 165 Tenn. 655, 659, 57 S.W.2d 787, 788 (1933). The principle of judicial neutrality is embodied in both Tenn. Const. art. 6, § 11 and in the Code of Judicial Conduct. Thus, one of the central tenets of our jurisprudence is that all litigants have a right to have their cases heard by fair and impartial judges.
>
> The courts have also recognized, however, that the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial. *See Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954) (holding that "justice must satisfy the appearance of justice"); *In re Cameron,* 126 Tenn. 614, 658, 151 S.W. 64, 76 (1912). Thus, even when a judge believes that he or she can hear a case fairly and impartially, the judge should recuse himself or herself if "the judge's impartiality might reasonably be questioned." *See* Tenn. S. Ct. R. 10, Canon 3(E)(1); *Chumbley v. People's Bank & Trust Co.*, 165 Tenn. at 659, 57 S.W.2d at 788.

*Kinard v. Kinard*, 986 S.W.2d 220, 227–28 (Tenn. Ct. App. 1998).[4] The test of whether there is a reasonable basis for questioning a judge's impartiality is an objective one. *Bd. of*

---

[4] Article VI, § 11 of the Tennessee Constitution provides that "no Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested." The purpose of this constitutional provision is to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality or favor. *Chumbley v. People's Bank & Trust Co.,* 165 Tenn. 655, 659, 57 S.W.2d 787, 788. (1933).

*Bd. of Prof'l Responsibility of Supreme Court of Tennessee v. Slavin*, 145 S.W.3d 538, 548 (Tenn. 2004).

*Prof'l Responsibility of Supreme Ct. of Tennessee v. Slavin*, 145 S.W.3d 538, 548 (Tenn. 2004) (citing *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564–65 (Tenn. 2001)).[5]

There is no fact alleged or shown in the record, other that the fact that the judge has known the father of one of the litigants for a number of years and worked with him in a professional capacity, which would give rise to a basis to question the judge's impartiality. The judge's explanation that, in her former position as a prosecutor and lawyer in private practice, she came into contact with Mother's father, a police officer in the county in which the judge sits, raises no concerns of judicial impropriety within the scope of RJC 1.2 or RJC 2.11(A)(1) in hearing a case involving the officer's daughter.[6] Simply stated, the mere fact that the judge worked with Mother's father in the past does not support a determination that the judge's impartiality might reasonably be questioned.[7]

Father's contentions relative to RJC 2.11(A)(4) are likewise not supported by the record. As an initial matter, we note that the rule speaks to a "party" or "party's lawyer"; Mother's father, as to whom the judge's disqualifying relationship exists, is not a party to these proceedings and there is no fact in the record and no allegation that his mere presence at hearings involving his daughter has in any way influenced the judge or any ruling. The vague and ambiguous statement that Mother's father was of some "help" relative to the judge's appointment is insufficient to raise a concern that disqualification may required by RJC 2.11(A)(4).[8] Further, there is no allegation of fact and there is no proof in the record

---

[5] Recusal is appropriate "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis v. Liberty Mut. Ins. Co.,* 38 S.W.3d at 564–65 (quoting *Alley v. State,* 882 S.W.2d 810, 820 (Tenn. Crim. App.1994)).

[6] Even though not specifically alleged, we have also considered the applicability of RJC 2.4(C) to the circumstances presented and have determined that the record does not support the trial judge's recusal on the basis of said rule.

[7] For the same reason, we see no impropriety in the judge having conducted proceedings in the case as Juvenile Court Magistrate. We have reviewed the June 20, 2011 Order entered following the hearing on May 9, 2011 and the order entered January 13, 2012 following the hearing on November 28, 2011. The June 20, 2011 Order, recited that Father acknowledged paternity of Jacob; the order then addressed parenting time and the parameters of child support were set, with counsel for the parties to attempt to agree on the amount of support and Father's arrearage and, failing same, to ask the court to set support. The order entered January 13, 2012 adopted a permanent parenting plan and set support. There is no indication that Father appealed either of the orders to the then-sitting Juvenile Court Judge or sought any relief relative thereto other than the petition to modify which led to this appeal.

[8] We address this contention despite the fact that it is entirely based on a statement in an affidavit
(continued...)

showing the manner in which the judge was appointed or the nature of any "campaign" run by the judge for the position or any "help" Mother's father may have provided in that regard.[9] The record does not give factual support to Father's argument that the judge should be disqualified.

## IV.  Conclusion

For the foregoing reasons, we affirm the judgment of the trial court denying the motion for recusal and remand this case for further proceedings.

_____
RICHARD H. DINKINS, JUDGE

---

[8](...continued)
in which the affiant states: "He told her he was 'glad he could help' or words to that effect."

[9] It appears that the judge was appointed to the position by the Williamson County Commission; the circumstances by which there was a vacancy in the position and the procedure utilized by the Commission for filling the vacancy is not apparent from the record.