IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 13, 2025

## SENIOR PASTOR CHARLES DOWELL, JR., ET AL. V. STATE OF TENNESSEE MACON COUNTY ASSESSOR'S OFFICE

**Appeal from the Chancery Court for Davidson County**
**No. 24-1174-III    I'Ashea L. Myles, Chancellor**

---

### No. M2025-01583-COA-T10B-CV

---

This is an interlocutory appeal as of right, pursuant to Tenn. Sup. Ct. R. 10B, filed by Senior Pastor Charles Dowell, Jr. and Priest Baldwin Hutchinson ("Petitioners") seeking to recuse the trial judge in this case.[1]  Having reviewed the petition for recusal appeal filed by Petitioners and finding no reversible error, we affirm.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Senior Pastor Charles Dowell, Jr. and Priest Baldwin Hutchinson, Lafayette, Tennessee, Pro Se appellants.[2]

---

[1] Petitioners state that their motion was one for disqualification rather than recusal.  However, in this case, it is a distinction without a difference.

[2] We deem no answer or oral argument necessary and instead proceed to summarily decide this appeal.  *See* Tenn. Sup. Ct. R. 10B, §§ 2.05, 2.06.

## OPINION

## <u>Background</u>

In the underlying administrative proceedings, Straitway Truth Ministry ("Straitway") sought property tax exemption on religious grounds per Tenn. Code Ann. § 67-5-212.[3] Certain parcels belonging to Straitway were denied tax exemption. Petitioners testified on behalf of Straitway. Rick Shoulders, Assessor of Macon County, Tennessee ("Macon County"), participated on behalf of his office. The State Board of Equalization ("the Board") upheld an initial denial by the administrative law judge of tax exemption for the parcels in question. In October 2024, Petitioners sought judicial review of the Board's final order in the Chancery Court for Davidson County ("the Trial Court"), proceeding under Tenn. Code Ann. § 4-5-322. The trial judge presiding in this matter is Chancellor I'Ashea L. Myles ("Chancellor Myles").

In March 2025, in the absence of any responsive activity from Macon County, Petitioners moved for summary judgment on the administrative record. In July 2025, three days before the scheduled hearing, Macon County filed a response. Macon County argued that Petitioners' motion for summary judgment should be denied for noncompliance with Tenn. Code Ann. §§ 4-5-322 and 67-5-212, based specifically on failure to serve the Board and seeking tax exemption for multiple residences respectively. Macon County requested a waiver from local rules regarding the timeliness of its response, citing illness of counsel. Petitioners objected to the late responsive filing.

The Trial Court proceeded to make several procedural rulings that Petitioners strenuously disagree with. Petitioners were ordered to serve the Board pursuant to Tenn. Code Ann. § 4-5-322(b)(2), which provides as relevant: "Copies of the petition shall be served upon the agency and all parties of record, including the attorney general and reporter, in accordance with the provisions of the Tennessee Rules of Civil Procedure pertaining to service of process." Petitioners also were ordered to retain counsel for Straitway because it is a separate entity which Petitioners, non-attorneys, cannot represent. At a July 9, 2025 hearing, the Trial Court instructed Petitioners to wait in the courtroom to receive service of Macon County's responsive filing. Petitioners strongly objected to this, as well as what they consider the recasting of the action into one pursued by the entity, Straitway, as opposed to them. Meanwhile, Straitway moved to intervene.

---

[3] Straitway is sometimes spelled "Straightway" in the documents attached to the petition for recusal appeal. Straitway is the preponderant spelling.

In August 2025, the Trial Court entered an order. Straitway was permitted to intervene "to the extent Plaintiff is not already a party to this litigation." The Trial Court stated further, in pertinent part:

> As previously stated by the orders entered on July 11, 2025 and July 14, 2025, "this Court cannot rule upon the record until the record is before this Court. Once the State Board of Equalization and the Tennessee Attorney General and Reporter have been properly served, the agency shall cause the record to be sent to this Court for review. . . Plaintiffs are hereby **ORDERED** to serve the State Board of Equalization with the Petition in this matter."

> Plaintiffs Straitway, Dowell and Hutchinson's Motions for Summary Judgment are again **CONTINUED INDEFINITELY** until such time as Plaintiffs have complied with Tennessee Code Annotated § 4-5-322 by serving the State Board of Equalization and the Tennessee Attorney General and Reporter and causing the entire record to be filed in this Court. As a result, Straitway's motions seeking an immediate hearing, an order striking Macon County's response to Straitway's motion for summary judgment, and an order granting summary judgment are hereby **DENIED.**

After this, Petitioners filed a motion seeking Chancellor Myles' disqualification, asserting multiple instances of alleged bias. In September 2025, the Trial Court entered an order denying Petitioner's motion, finding in relevant part:

> It appears from the motion filed with this Court that Priests are dissatisfied with the procedural posture of this case which, for the most part, has been in their control and in the control of counsel for the church. The Priests have asserted that Defendants [Macon County Assessor's attorney] Guy Holliman and Rick Shoulders, "failed to answer into the case until three days before the court date over eight months after it was ripe- and that the chancellor still relied on their improperly served last-minute filing, further underscores the procedural unfairness."

> The Priests further assert:

>> The Priests assert that this Court should be disqualified for allowing last-minute arguments and treating this as a new trial[.] [T]he chancellor has exceeded the proper scope of her jurisdiction and, in doing so, has willfully prejudiced and injured the pro se litigants. This action appears to protect judicial favoritism rather than uphold impartial justice.

-3-

Furthermore, this case has been ripe and in default since November 2024, over eight months ago.

. . .

The Court has departed from its neutral role by actively intervening in the litigation in a manner that favors the Defendants and non-parties. The Judge unilaterally served Guy Holliman's filing on Straightway Truth Ministry - an act traditionally reserved for the Clerk and then directed that Straightway obtain counsel without any motion for joinder or legal foundation. These actions constitute judicial overreach and create an appearance of bias and impropriety, violating both the Tennessee Code of Judicial Conduct and due process under the Constitution.

. . .

Here, the appearance of bias is unmistakable: the Chancellor fabricated a false procedural posture contrary to the official record, in order to favor Respondents. This constitutes a structural due process violation under Tumey v. Ohio, 273 U.S. 510 (1927), and Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), and requires her immediate disqualification.

(Priests' Motion to Disqualify at pp. 5, 7.)

The Priests have alleged that this Court has departed from its neutrality, siding and colluding with Attorney Guy Holliman in this case. There have been no substantive rulings from this Court made in this case to date. The Priests are the authors of their Complaint and they have still, as of this Order, failed to name the State Board of Equalization as a Defendant in this case which, they are required to do in order to begin this Court's administrative review. The Priests site to the procedure for administrative appeals as set forth in Tennessee Code Annotated 4-5-322(d) which requires the agency to send the certified record within forty-five (45) days of service. Yet, the Petitioners collectively have failed to serve the proper Defendant, State Board of Equalization, and thus this Court still has no administrative record to review. The Priests first moved the Court in their individual capacities, and only naming the church as a *"De Facto Plaintiff,"* although the Church is the entity with the tax burden. This Court required that the Church formally intervene in this action and obtain counsel. The Petitioners (Priests and Church) have collectively filed sixteen (16) motions in these proceedings. Of those, only one (1) motion was properly noticed for hearing.

-4-

Having analyzed this Motion, the supporting documents, and the law governing recusals, the Court finds that the Priests have presented no evidence that would prompt a reasonable, disinterested person knowing all the relevant facts to question this Court's impartiality. The Court has gone out of its way to inform the Priests and the Church what needs to be done, procedurally to cure the defect in this case so that the record can properly be brought before the Court. Yet, they collectively have repeatedly failed to obey the Orders of this Court.

Accordingly, it is **ORDERED, ADJUDGED** and **DECREED** that the parties' Motion is not well taken and is **DENIED.**

Pursuant to Tenn. Sup. Ct. R. 10B, Petitioners timely filed an interlocutory appeal as of right from the Trial Court's order denying recusal.

## Discussion

We review a trial court's ruling on a motion for recusal under a *de novo* standard of review with no presumption of correctness. Tenn. Sup. Ct. R. 10B § 2.01. "The party seeking recusal bears the burden of proof, and 'any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case.'" *Neamtu v. Neamtu*, No. M2019-00409-COA-T10B-CV, 2019 WL 2849432, at *2 (Tenn. Ct. App. July 2, 2019), *no appl. perm. appeal filed* (quoting *Williams by & through Rezba v. HealthSouth Rehab. Hosp. N.*, No. W2015-00639-COA-T10B-CV, 2015 WL 2258172, at *5 (Tenn. Ct. App. May 8, 2015), *no appl. perm. appeal filed*). As this Court explained in *Neamtu*:

> The party seeking recusal bears the burden of proof. *Williams*, 2015 WL 2258172, at *5; *Cotham v. Cotham*, No. W2015-00521-COA-T10B-CV, 2015 WL 1517785, at *2 (Tenn. Ct. App. Mar. 30, 2015) (*no perm. app. filed*). "[A] party challenging the impartiality of a judge 'must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned.'" *Duke* [*v. Duke*], 398 S.W.3d [665,] 671 [(Tenn. Ct. App. 2012)] (quoting *Eldridge v. Eldridge*, 137 S.W.3d 1, 7-8 (Tenn. Ct. App. 2002)). When reviewing requests for recusal alleging bias, "it is important to keep in mind the fundamental protections that the rules of recusal are intended to provide." *In re A.J.*, No. M2014-02287-COA-R3-JV, 2015 WL 6438671, at *6 (Tenn. Ct. App. Oct. 22, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016). "**The law on judicial bias is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because**

**of interest, partiality, or favor.'"** *Id.* (quoting *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009)).

*Neamtu*, 2019 WL 2849432, at *3 (quoting *In re Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016), *no appl. perm. appeal filed.*) (emphasis in original).

"[P]reservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998); *see also Offutt v. United States*, 348 U.S. 11, 14 (1954) (holding that "justice must satisfy the appearance of justice"). As such, Rule 2.11(A) of the Code of Judicial Conduct as set forth in Tenn. Sup. Ct. R. 10 requires a judge to recuse herself "in any proceeding in which the judge's impartiality might reasonably be questioned." *See also Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) (noting that recusal is required, even if a judge subjectively believes he or she can be fair and impartial, whenever "'the judge's impartiality might be reasonably questioned because the appearance of bias is as injurious to the integrity of the judicial system as actual bias'" (quoting *Bean*, 280 S.W.3d at 805)).

However, "a judge should not decide to recuse unless a recusal is truly called for under the circumstances." *Rose v. Cookeville Reg'l Med. Ctr.*, No. M2007-02368-COA-R3-CV, 2008 WL 2078056, at *2 (Tenn. Ct. App. May 14, 2008), *no appl. perm. appeal filed*. This is true because "'[a] judge has as much of a duty not to recuse [herself] absent a factual basis for doing so as [she] does to step aside when recusal is warranted.'" *Id.* (quoting *Mass v. McClenahan*, No. 93 Civ. 3290 (JSM), 1995 WL 106106, at *1 (S.D.N.Y. Mar. 9, 1995)). Recusal based upon an asserted appearance of bias or prejudice "is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." *Rose*, 2008 WL 2078056, at *2 (quoting *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981)).

Here, Petitioners point to multiple instances of alleged bias on Chancellor Myles' part. Petitioners cite as examples Chancellor Myles' order that they serve the Board; her holding their motions in abeyance pending service; her threatening to hold them in contempt should they not follow court orders; her ordering them to remain in the courtroom on July 9, 2025, to receive service of Macon County's filing; her excluding them as parties in favor of Straitway; and her accepting an untimely filing per the local rules from Macon County. Petitioners argue further that Chancellor Myles wrongly used a subjective standard to decide the motion to recuse. They draw an analogy that they have been 'locked out of the house,' so to speak, procedurally. In general, they say Chancellor Myles has been coercive and unfair toward them.

We note that each of Petitioners' examples of Chancellor Myles' alleged bias, or appearance of bias, stems from what Petitioners contend are legal errors. The difficulty with this is that this is a petition for recusal appeal under Tenn. Sup. Ct. R. 10B. As such, we are limited to examining whether the trial judge has shown judicial bias or the appearance thereof. It is not a general, error-correcting appeal. A trial court's rulings, even if adverse and/or erroneous, standing alone, do not serve as evidence of judicial bias. As this Court has explained:

> "[T]he mere fact that a judge has ruled adversely to a party . . . is not grounds for recusal." *Bd. of Pro. Resp. of Sup. Ct. of Tenn. v. Slavin*, 145 S.W.3d 538, 548 (Tenn. 2004) (quoting *Davis* [*v. Liberty Mut. Ins. Co.*], 38 S.W.3d [560,] 564-65 [(Tenn. 2001)]). Even rulings that are "erroneous, numerous and continuous, do not, without more, justify disqualification." *Boren* [*v. Hill Boren, PC*], 557 S.W.3d [542,] 549 [(Tenn. Ct. App. 2017)]. The foregoing notwithstanding, we acknowledge that, in rare situations, "the cumulative effect of the 'repeated misapplication of fundamental, rudimentary legal principles that favor[ ] [one party] substantively and procedurally' can be the basis for recusal." *Id*. at 551 (quoting *Krohn v. Krohn*, No. M2015-01280-COA-T10B-CV, 2015 WL 5772549, at *7 (Tenn. Ct. App. Sept. 22, 2015)).

*Fox v. Gordon*, No. M2024-01083-COA-T10B-CV, 2024 WL 3857840, at *3 (Tenn. Ct. App. Aug. 16, 2024).

While Petitioners state that Chancellor Myles applied a subjective standard to decide their motion to recuse, we disagree. Chancellor Myles clearly found that Petitioners "presented no evidence that would prompt a reasonable, disinterested person knowing all the relevant facts to question this Court's impartiality." Petitioners have not pointed to any statement, remark, relationship, or other fact showing Chancellor Myles is predisposed against them. They have cited only alleged legal errors. Error by a trial judge adverse to one party does not automatically entail that the trial judge is biased against that party. Petitioners cite nothing showing, for example, that Chancellor Myles' interpretation of Tenn. Code Ann. § 4-5-322 is based on anything other than her reading of the statute, whether her reading is correct or not. Likewise, there is nothing inherently improper about a trial judge warning a party that failure to obey her order could lead to contempt charges or ensuring that a party at a hearing is served with a document. Regarding the late response from opposing counsel that Petitioners take issue with, there is no hint that Chancellor Myles would not have extended the same lenience toward Petitioners had the roles been reversed. None of these alleged errors by Chancellor Myles amount to a misapplication of fundamental, rudimentary legal principles, done with a favored or disfavored party in mind. In other words, Petitioners have shown nothing linking Chancellor Myles' decisions

-7-

toward a specific predisposition or hostility against them as opposed to any other similarly situated party.

To reiterate, Petitioners filed a petition seeking judicial review of the Board's decision denying tax exemption for certain of Straitway's parcels. Chancellor Myles has ruled on what must occur for judicial review to proceed. As Chancellor Myles said in her order denying recusal, "[t]here have been no substantive rulings from this Court made in this case to date." She explained that the court has "gone out of its way to inform the Priests and the Church what needs to be done, procedurally to cure the defect in this case so that the record can properly be brought before the Court." Whether Chancellor Myles is correct or not in her interpretation of the law is beside the point in this Rule 10B appeal. Any alleged errors may be appealed later, but they are not proper grounds for recusal. *See Groves v. Ernst-W. Corp.*, No. M2016-01529-COA-T10B-CV, 2016 WL 5181687, at *5 (Tenn. Ct. App. Sept. 16, 2016) ("[A]dverse rulings of a trial judge, even if erroneous, numerous, and continuous, are generally proper grounds for appeal, not for recusal.").

Petitioners have presented nothing that would cause an objective, knowledgeable member of the public to find a reasonable basis for doubting Chancellor Myles' impartiality. We find no reversible error in the Trial Court's denial of Petitioners' motion for recusal. Petitioners have also filed a motion with this Court requesting a stay of proceedings ahead of an October 22, 2025 hearing in the Trial Court. In view of our affirmance of the Trial Court's judgment, we decline to grant Petitioners' motion for stay.

## Conclusion

For the foregoing reasons, we affirm the Trial Court's denial of the motion for judicial recusal. The costs of this appeal are taxed to Senior Pastor Charles Dowell, Jr. and Priest Baldwin Hutchinson, for which execution may issue. This case is remanded for further proceedings.

s/ D. Michael Swiney_____
D. MICHAEL SWINEY, CHIEF JUDGE