IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 16, 2013

# DAVID SCOTT WINFREY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Sumner County**
**No. 819-2007, 848-2007, 41-2008     Dee David Gay, Judge**

**No. M2012-01148-CCA-R3-CO-Filed July 30, 2013**

On April 10, 2008, the petitioner entered a no contest plea to twenty-nine Class A misdemeanors consisting of one count of aggravated criminal trespass, one count of stalking, thirteen counts of harassment, and fourteen counts of violation of an order of protection. *State v. Winfrey (Winfrey II)*, No. M2009-02480-CCA-R3-CD, 2010 WL 4540288, at *1-2 (Tenn. Crim. App. Nov. 10, 2010). The petitioner was ultimately sentenced to eleven months and twenty-nine days for each conviction, with ten of the sentences to be served consecutively for an effective sentence of just under ten years. The trial court ordered three of the consecutive sentences to be served in confinement and the remaining seven to be served on probation. The petitioner was arrested on December 8, 2010, during the pendency of his appeal; and after a hearing held in April 2011, the trial court revoked the petitioner's probation and ordered him to serve his remaining seven consecutive eleven-month-twenty-nine-day sentences in confinement. The petitioner did not file a direct appeal. Instead, on March 15, 2012, the petitioner filed a motion to serve the balance of his sentence on probation. In the alternative, the petitioner sought to have the court set aside the probation revocation pursuant to the writ of error coram nobis based on the expunction of the record of his December 2010 arrest due to a stay of probation in effect at the time. The trial court denied both the motion to serve the remaining sentence on probation and the petition for the writ of error coram nobis, as well as an oral motion for the judge's recusal. The petitioner appeals. After a thorough review of the record, we find no error and accordingly affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

PAUL G. SUMMERS, SR. J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

William Bart Highers and Jason B. Elliott, Gallatin, Tennessee (at hearing); and David Scott Winfrey, Gallatin, Tennessee, Pro Se (on appeal) for the appellant, David Scott Winfrey.

Robert E. Cooper, Jr., Attorney General & Reporter; Sophia S. Lee, Senior Counsel; L. Ray Whitley, District Attorney General; and Bryna Grant, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual and Procedural History

The petitioner's twenty-nine misdemeanor convictions were the result of an abusive romantic relationship with the victim. On April 23, 2007, the victim obtained an order of protection against the petitioner. Following numerous violations of the order on numerous dates, the petitioner entered a no contest plea to the twenty-nine Class A misdemeanors listed above. *Winfrey II*, 2010 WL 4540288, at *1-2. The trial court initially ordered ten counts of the violation of an order of protection to run consecutively for an effective ten-year sentence. On direct appeal, it was determined that the trial court improperly relied on Tennessee Code Annotated section 39-13-113(g), and the case was remanded for resentencing. *State v. Winfrey (Winfrey I)*, No. M2008-01429-CCA-R3-CD, 2009 WL 2486180, at *4 (Tenn. Crim. App. Aug.14, 2009).

On October 30, 2009, the trial court again imposed sentences of eleven months and twenty-nine days for each conviction, with ten of the sentences to be served consecutively for an effective sentence of ten years. *Winfrey II*, 2010 WL 4540288, at *2. The trial court based the sentence on its finding that the petitioner had an extensive history of criminal activity, citing the fact that the defendant actually violated the court's order 1,270 times by placing 185 calls to the victim's home, 224 calls to her work, and 861 calls to her cell phone, all while incarcerated. *Id.* at *4. The trial court ordered three of the petitioner's sentences to be served in prison and the remaining seven to be served on probation. *Id.* at *2. On the judgment sheets for the sentences to be served on probation, the trial court imposed as a condition of probation that the petitioner have absolutely no contact with the victim. The appellant filed a timely appeal. *Id.*

The appellate decision upholding the sentencing was entered pursuant to Tennessee Rule of Appellate Procedure 38 on November 10, 2010. However, the mandate was not issued until February 22, 2011. *See* Tenn. R. App. P. 42. Meanwhile, on December 8, 2010, a warrant charging the petitioner with a violation of his probation was issued. The defendant's probation officer characterized the violation as "Violation Rule #1: Not violate any law. Client has been charged with Aggravated Assault against [the victim] with whom he had an ABSOLUTELY NO CONTACT ORDER."

On April 11 and 18, 2011, the trial court heard evidence and arguments on the

defendant's probation violation. The victim testified that the petitioner was released from jail in November 2009 and that he first had contact with her around the first of December 2009. During this time, the petitioner's appeal from his resentencing was pending. The victim first noticed the petitioner at a gas station near her workplace where she frequently stopped in the mornings. The petitioner waved her down, and she stopped her car and spoke briefly to him. Thirty minutes later, he called her at her work, where the phone system did not allow her to identify the origin of incoming calls. The petitioner continued to call her at work that day and for several days thereafter, then urged her to meet him because he feared he would "get in trouble" for contacting her by phone; she agreed. The victim testified that on the day she first saw the petitioner or the next day, she contacted a detective in Sumner County and then the petitioner's probation officer regarding the contact he had with her. She "was told [she] would have to start from fresh and with new charges for anything to be done," because the no contact order was part of the probationary sentence and the probation was stayed during the pendency of the petitioner's appeal. She also testified that at some point, she contacted the District Attorney's office regarding the petitioner's contacting her.

Having ascertained that she could expect no immediate help from the criminal justice system, she continued to have contact with the petitioner in 2010, with the exception of a period from mid-January to March. The petitioner convinced the victim that he had dealt with his anger issues, and they resumed a relationship. The victim testified that the petitioner assaulted her in May 2010 in Robertson County[1] and that in June 2010 the petitioner became angry that she would not answer the phone, drove to her home in Kentucky, and assaulted her there. On December 8, 2010, the victim was living in Tennessee; and the defendant had contacted her to say that he had some of her property at his house. The victim asked him to take it to her brother's home, and he refused. Eventually, she arranged to pick it up on his back porch while he was out. When she arrived the items were not there, but she could hear the petitioner in the house. She knocked multiple times, and the petitioner opened the door and pulled her into the house. The petitioner assaulted her, threatened to rape her, punched her in the eye, and choked her until she could not breathe. The petitioner then apologized and said, "Look what you made me do." While the petitioner went to the kitchen, the victim escaped to her car and called 911. The victim's testimony from the preliminary hearing on the aggravated assault charge, which was consistent with her testimony at the probation revocation hearing, was introduced into evidence at the revocation hearing.

The defense argued against revocation based on the fact that the petitioner was not on probation at the time of the alleged assault and that the no contact order was not in place, averring that the sentence, including the probation and its terms and conditions, was

_____

[1] The victim testified that she notified authorities in Robertson County in May 2010 after the petitioner assaulted her in a vehicle, and nothing was done, "[s]o eventually I gave up."

suspended pending his appeal. The trial court found that the petitioner had committed an assault when he punched the victim in the eye. The trial court further determined that the petitioner had, in violation of Tennessee Code Annotated section 39-13-113, disregarded an oral order in which the court ordered the defendant to have no contact with the victim, and that the petitioner had violated the no contact order which was part of the judgment sheet.[2] The trial court revoked the petitioner's probation on these bases and ordered him to serve the remaining seven consecutive eleven-month-twenty-nine-day sentences in confinement.[3] The petitioner did not file a direct appeal.

On July 7, 2011, the trial judge recused himself from the case which charged the petitioner with aggravated assault based on the fact that, as part of the probation revocation hearing, the trial court had made certain credibility determinations regarding the victim's testimony and that these could lead to an appearance of impropriety in a trial based on the same factual allegations and same testimony. The case was transferred to another judge and on January 25, 2012, the Sumner County Criminal Court entered an order dismissing the charges against the petitioner. The petitioner had apparently been indicted pursuant to Tennessee Code Annotated section 39-13-102(c), which requires the defendant to have been "enjoined or restrained by an order, diversion, or probation agreement." Because the defendant's probation was suspended during the pendency of his appeal and the no contact order was tied to the probation, the trial court found that there was no protection order in place and dismissed the case.[4] An order to expunge the record of the charges was issued on February 28, 2012.

On March 15, 2012, the petitioner filed his motion to serve his remaining sentence on probation pursuant to Tennessee Code Annotated section 40-35-306(c) and, in the alternative, a coram nobis petition. The petitioner based the petition for coram nobis on the recent dismissal of the warrant and expunction of his record. During the April 13, 2012 hearing, the petitioner also made an oral motion for the trial judge to recuse himself. The trial court specifically found that it had no actual "bias" and likewise found no appearance of impropriety. The trial court found that the petitioner had shown no change in circumstances, no remorse, and no indication that he would respect the law. The trial court cited the petitioner's prior disregard for the orders of the court and found that there was

_____

[2] The date and substance of this order is not a part of the record.

[3] The trial court made an oral ruling revoking the petitioner's probation from the bench on April 18, 2011 and filed an order revoking the probation on June 13, 2011.

[4] During the April 13, 2012 hearing, the State represented that it had elected not to pursue a domestic assault charge upon dismissal, while the petitioner in his appellate brief alleged that the trial court had denied the State the opportunity to proceed.

"absolutely nothing to show that anything has changed other than the fact that he's been in jail and he wants out." The trial court also found that the dismissal of the aggravated assault charge was irrelevant to its finding that the defendant had committed the crime of assault which was the basis for revocation. On April 24, 2012, the trial court issued a written order denying both the motion and the petition.

The petitioner filed a notice of appeal on May 15, 2012. Subsequently, on June 29, 2012, the petitioner filed a Motion for Recusal. The trial court held a hearing on the Motion for Recusal on July 16, 2012, during which the petitioner also requested credit for serving his sentence on probation during the pendency of his appeal. The State argued that he had not been on probation and therefore was not entitled to credit. The trial court denied the motion, determining in its July 27, 2012 written order that there was no objective or subjective basis for recusal and noting that it had also denied the petitioner's first motion to recuse, which was the subject of an appeal. The judge also noted that he had, after ruling on the motion, discovered that the petitioner had filed a complaint against him with the Tennessee Board of Judicial Conduct and that the Board had dismissed the complaint. On July 30, 2012, the petitioner requested this Court to allow an expedited appeal of the Motion for Recusal. This Court filed an order on August 17, 2012, allowing the petitioner to raise the recusal issues in his appellate brief.

On appeal, the petitioner asserts that the court erred in denying his request to serve the remainder of his sentence on probation, alleging that the original revocation was in error due to the fact that his probation was not in effect during the pendency of his appeal. He also asserts that the court erred in denying his petition for a writ of error coram nobis based on the expunction of the record of his arrest for aggravated assault. Finally, he asserts that the trial judge erred in refusing to recuse himself.

## II. Analysis

### A. Denial of Motion to Serve Remaining Sentence on Probation

The petitioner petitioned the court to allow him to serve the remainder of his sentence on probation pursuant to Tennessee Code Annotated section 40-35-306(c), which provides:

> At any time during the period of continuous confinement ordered pursuant to this section, the defendant may apply to the sentencing court to have the balance of the sentence served on probation supervision. The application may be made at no less than two-month intervals.

A trial court's denial of an application to suspend the balance of a petitioner's sentence is reviewed for abuse of discretion. *State v. Ruiz*, 204 S.W.3d 772, 776 (Tenn. 2006). Such a ruling, like a denial of a motion to reduce a sentence under Tennessee Rule of Criminal Procedure 35, "is not the equivalent of imposing a sentence but simply reaffirms the sentence previously imposed." *Id.* at 777. An abuse of discretion occurs when the trial court has applied an incorrect legal standard, or has reached a decision which is illogical or unreasonable and causes an injustice to the party complaining. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009). In determining whether to suspend a sentence, the court must decide "whether post-sentencing information or developments have arisen that warrant an alteration in the interest of justice." *Ruiz*, 204 S.W.3d at 778; *see also State v. McDonald*, 893 S.W.2d 945, 947 (Tenn. Crim. App. 1994) (noting that under Tennessee Rule of Criminal Procedure 35, a negotiated sentence may be reevaluated "where unforeseen, post-sentencing developments would permit modification of a sentence in the interest of justice").

Tennessee Code Annotated section 40-35-306(c) applies "where a defendant is sentenced to confinement in a local jail or workhouse for no greater than one year followed by a period of probation ('split confinement')." *Ruiz*, 204 S.W.3d at 776. Here, the petitioner's probation was revoked, and he was no longer serving a split sentence. However, Tennessee Code Annotated section 40-35-314(c) similarly provides:

> The court shall retain full jurisdiction over the defendant during the term of the sentence and may reduce or modify the sentence or may place the defendant on probation supervision where otherwise eligible. Following the first application, applications to reduce or to alter the manner of the service of the sentence may be made at no less than two (2) month intervals.

The Court in *Ruiz* noted that its analysis regarding the review of a decision to deny an application to suspend the remainder of a sentence applied equally to this provision. *Ruiz*, 204 S.W.3d at 776 n.3; *see also State v. Lewis*, No. M2007-00610-CCA-R3-CD, 2008 WL 1891438, at *4 (Tenn. Crim. App. Apr. 29, 2008) (concluding there must be "unforeseen post-sentencing facts" to alter, a sentence negotiated pursuant to a guilty plea. Tennessee Code Annotated section 40-35-314(c)).

In the case at bar, the trial court found that the petitioner had shown no new post-sentencing facts and that in particular, that the petitioner had not shown remorse or any indication that he would follow the orders of the court. While the petitioner alleges that the dismissal of the aggravated assault charge against him is a post-sentencing fact necessitating suspension of his sentence, the trial court found this irrelevant to its determination that the petitioner had assaulted the victim. The petitioner, both while in jail and during his

subsequent release, has doggedly and relentlessly ignored court orders and continued to contact the victim. The trial court found that he violated an order 27 times from jail by telephoning the victim. The victim testified that the petitioner assaulted her three times during the pendency of his appeal, when the court-ordered protection which had provided her with some modicum of safety lapsed. We conclude that the trial court did not abuse its discretion in finding that an alteration of the petitioner's sentence was not in the interest of justice.

## B. Writ of Error Coram Nobis

While the petitioner asserts he is entitled to coram nobis relief, the State alleges he has abandoned this claim on appeal. Because a pro se litigant is held to less stringent standards and because the petitioner's brief does allege that he is entitled to relief under the writ of error coram nobis based on the expunction of his arrest, we will address the claim.[5] *See Allen v. State*, 854 S.W.2d 873, 875 (Tenn. 1993).

"[A]n extraordinary remedy known more for its denial than its approval," *State v. Mixon*, 983 S.W.2d 661, 666 (Tenn. 1999), a writ of error coram nobis may be granted according to the sound discretion of the trial court; and its denial is reviewed for abuse of discretion, *Wilson v. State*, 367 S.W.3d 229, 235 (Tenn. 2012). A writ of error coram nobis is available "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40-26-105(b). The writ may issue only where the petitioner was without fault in failing to present the evidence at the proper time. *Id.* The writ is also "confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding." *Id.*

"In order to be considered 'newly discovered evidence,' the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible." *Harris v. State*, 301 S.W.3d 141, 152 (Tenn. 2010) (Koch and Clark, JJ., concurring) (footnotes omitted); *see also id.* at 152 n.12 (citing cases). In determining whether the evidence may have led to a different result, the court should consider "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.'" *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007) (quoting *State v. Vasques*, No. M2004-00166-CCA-R3-

---

[5] In so far as the petitioner seeks review of the trial court's revocation of his probation, his failure to appeal that decision within the appropriate time frame precludes our review.

CD, 2005 WL 2477530, at *13 (Tenn. Crim. App. Oct. 7, 2005)).

We conclude that the expunction of the petitioner's aggravated assault charge does not fit the definition of "newly discovered evidence" in that it was not "existing, but not yet ascertained, at the time of the original trial."[6] *Harris*, 301 S.W.3d at 152 (Koch and Clark, JJ., concurring). Clearly, the expunction did not yet exist. Insofar as the petitioner asserts that the "newly discovered evidence" is the fact that his sentence was stayed pending his appeal and that the no contact order, which was linked to his probation, was not in effect, this is an issue that was thoroughly litigated at the revocation hearing. The petitioner chose not to appeal the outcome of that hearing and cannot now complain regarding the trial court's determination.[7] *See* T.C.A. § 40-35-311(e)(2).

Furthermore, as the trial court found, knowledge of the expunction would not, at any rate, have changed the trial court's determination. While the State would have to prove the elements of the offense of aggravated assault beyond a reasonable doubt in order to convict the petitioner of the charge, the trial court had the power to revoke the petitioner's probation upon finding by a preponderance of the evidence that the terms of the probation were violated. T.C.A. § 40-35-311(e)(1). Because this is a lesser burden of proof, it is entirely possible that conduct that could serve as the basis for a probation revocation would nevertheless fail to result in a conviction.

We conclude that the trial court did not abuse its discretion in denying the petition because the petitioner failed to show that the evidence was newly discovered or that the evidence may have resulted in a different judgment.

---

[6] We note that the writ of error coram nobis applies to matters that were not or could not have been litigated "on the *trial* of the case." T.C.A. § 40-26-105(b) (emphasis added). While our Supreme Court has held that a guilty plea is a "trial" within the meaning of the statute, we find no case deciding whether a probation revocation hearing is a "trial" whose errors are subject to the remedy provided by the writ. *See Wlodarz v. State*, 361 S.W.3d 490, 502-04 (Tenn. 2012) (examining various definitions for "trial"). However, given our conclusion that the petitioner has alleged no newly discovered evidence within the meaning of the statute and that the trial court did not err in finding that the evidence would not have changed the outcome of the determination, we pretermit this issue.

[7] We further note that, although the petitioner is correct that the trial court lost jurisdiction upon the filing of the appeal, "a trial court c[an] appropriately consider a probation revocation warrant based on a criminal offense committed during appeal after completion of the appeal and return of jurisdiction to the trial court." *State v. Adkisson*, Nos. M2000-01079-CCA-R3-CD, M2000-02319-CCA-R3-CD, 2001 WL 1218570, at *10 (Tenn. Crim. App. Oct. 12, 2001). This is exactly what the trial court did, finding, after the mandate was issued, that the defendant violated his probation because "an obligation not to commit a criminal violation is so inherently and patently a requirement of our citizens that it attaches to any grant of probation and... probationers, whether they be present or future, are put on notice, as a matter of law, that further criminal acts may result in revocation." *State v. Stone*, 880 S.W.2d 746, 749 (Tenn. Crim. App. 1994).

## C. Recusal

The petitioner also asserts that the trial judge erred in refusing to recuse himself, contending that the judge's decision to recuse himself from hearing the aggravated assault case was an acknowledgment of bias against the petitioner.

A fair trial before an impartial tribunal is a fundamental constitutional right. *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002). A judge is not competent to preside over a case in which the judge "may be interested, or where either of the parties shall be connected with him by affinity or consanguinity, within such degrees as may be prescribed by law, or in which he may have been of counsel, or in which he may have presided in any inferior Court." Tenn. Const. art VI, § 11; *see also* T.C.A. § 17-2-101(5) (further disqualifying a judge who is connected to the victim of a felony). "As a matter of custom and law, recusal decisions are made by the trial judge himself or herself." *State v. Hester*, 324 S.W.3d 1, 72 (Tenn. 2010). The trial court's ruling on a motion for recusal where recusal is not mandated under the Tennessee Constitution or Tennessee Code Annotated section 17-2-101 is reviewed for abuse of discretion. *Id.,* at 13. Relief will only be granted when the trial court has applied an incorrect legal standard or has reached an illogical or unreasonable decision which causes an injustice to the complaining party. *Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009).

Under Tennessee Supreme Court Rule 10, Canon 3(E)(1):

> A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
>
> (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
> (b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it;
>
> (c) the judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent, or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in

controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding;

(d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding;

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

This Rule was in effect until July 1, 2012, when it was replaced by Tennessee Supreme Court Rule 10, Rules of Judicial Conduct 2.11. *See also* Sup. Ct. R. 10B (2012).

Tennessee employs an objective standard for determining the propriety of recusal. *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). "'[T]he preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial.'" *Bd. of Prof'l Responsibility of the Sup. Ct. of Tenn. v. Slavin*, 145 S.W.3d 538, 548 (Tenn. 2004) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)). Thus, recusal is necessary "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Alley*, 882 S.W.2d at 820. However, adverse rulings by a trial judge, "even if erroneous, numerous and continuous," do not necessarily require disqualification. *Id.* at 821.

In this case, the trial court decided to recuse itself from the petitioner's aggravated assault case based on the objective standard detailed above. The trial court, while noting that it had no actual bias, reasoned that its credibility determinations in favor of the victim during the revocation hearing could create an appearance of partiality in the aggravated assault case, which was based on the same facts and which required making the same credibility determinations.

However, the issues raised by the petitioner's March 15, 2012 filings were completely distinct from the issues which the trial court had determined to recuse itself from deciding. The victim's credibility is not determinative of the issues raised in these later filings. The trial court in the instant application was required to determine: (1) whether post-sentencing information or developments had arisen that warranted an alteration of the sentence in the interest of justice and (2) whether the petitioner could point to any newly discovered evidence which merited coram nobis relief. The petitioner provides no basis for questioning the impartiality of the trial court regarding its ability to determine these issues. Accordingly, the trial court did not abuse its discretion in denying the motion to recuse.

### III. Conclusion

Because the appellant has not shown that the trial court abused its discretion in denying his motion to suspend his sentence, in denying his petition for coram nobis relief, and in declining to recuse itself, we affirm the judgments of the trial court.

_____
PAUL G. SUMMERS, Senior Judge